**MARK BRNOVICH**
**ATTORNEY GENERAL**
Drew. C. Ensign (No. 25463)
Oramel H. (O.H.) Skinner (No. 32891)
Brunn (Beau) W. Roysden III (No. 28698)
Rusty D. Crandell (No. 26224)
Anthony R. Napolitano (No. 034586)
Robert J. Makar (No. 33579)
    Assistant Attorneys General
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-5025
Drew.Ensign@azag.gov

*Attorney for Defendant Charles L. Ryan,*
*in his official capacity as Director of the*
*Arizona Department of Corrections*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Abelardo Chaparro, | Case No.: 2:19-cv-00650-DWL |
| Plaintiff, | |
| v. | **DEFENDANT'S MOTION FOR CERTIFICATION OR DISMISAL** |
| Charles L. Ryan, in his official capacity as Director of the Arizona Department of Corrections, | |
| Defendant. | |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................... 2

ARGUMENT ......................................................................................................... 5

   I.   THIS COURT SHOULD CERTIFY PLAINTIFF'S STATE LAW CLAIM
   OR ABSTAIN ..................................................................................................... 5

     A. The Requirements For Pullman Abstention Are Satisfied Here ................... 5

     B. Although The Requirements For *Pullman* Abstention Are Satisfied,
     Certification Is Preferable Here ........................................................................ 6

     C. Alternatively, *Pullman* Abstention Is Warranted ..................................... 7

   II.  CLAIM TWO IS BARRED BY *HECK V. HUMPHREY* ............................ 8

   III.   PLAINTIFF'S EQUAL PROTECTION CLAIM (CLAIM ONE) FAILS .... 9

     A. Section 718 Distinguishes Based On Receipt Of Binding Promises, Not
     Guilty Pleas ...................................................................................................... 9

     B. Even Section 718 Distinguished Purely Based On Guilty/Non-Guilty Pleas, It
     Would Still Pass Constitutional Muster .......................................................... 10

   IV.   PLAINTIFF'S DUE PROCESS CLAIM (CLAIM TWO) FAILS ............... 10

     A. Plaintiff Has No Liberty Interest In Parole Eligibility ................................ 11

     B. Post-Conviction Review Provides Sufficient Process ................................ 15

   V.  PLAINTIFF SHOULD BE REQUIRED TO JOIN THE BOARD ................. 15

CONCLUSION .................................................................................................... 16

# TABLE OF AUTHORITIES

## **Cases**

*Alto v. Black*,

738 F.3d 1111 (9th Cir. 2013)...................................................................... 15

*Arizonans for Official English v. Arizona*,

520 U.S. 43 (1997) ............................................................................... 6, 7

*Baumann v. Arizona Dept. of Corr.*,

754 F.2d 841 (9th Cir. 1985)...................................................................... 11

*Bowen v. Gilliard*,

483 U.S. 587 (1987) .................................................................................... 9

*Bowman v. Schwarzenegger*,

No. 07-2164, 2009 WL 799274 (E.D. Cal. Mar. 23, 2009) ........................................ 6

*Carver v. Lehman*,

558 F.3d 869 (9th Cir. 2009)........................................................... 11, 14, 15

*Chaparro v. Bartos*,

No. 03-701, 2010 WL 382889 (D. Ariz. Jan. 28, 2010)........................................... 3, 4

*Courthouse News Serv. v. Planet*,

750 F.3d 776 (9th Cir. 2014)........................................................................ 6

*FDA v. Brown & Williamson Tobacco Corp.*,

529 U.S. 120 (2000) .................................................................................. 12

*Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*,

442 U.S. 1 (1979) ...................................................................................... 11

*Havasupai Tribe v. Anasazi Water Co. LLC*,

321 F.R.D. 351 (D. Ariz. 2017) ................................................................... 15

*Heck v. Humphrey*,

512 U.S. 477 (1994) ..........................................................................1, 8, 9

ii

*Hughey v. Kernan,*

    No. 18-313, 2019 WL 329535 (S.D. Cal. Jan. 24, 2019)..............................6

*Kentucky Dep't of Corr. v. Thompson,*

    490 U.S. 454 (1989) ............................................................................... 11

*King v. St. Vincent's Hosp.,*

    502 U.S. 215 (1991) ............................................................................... 12

*Manney v. Cabell,*

    654 F.2d 1280 (9th Cir. 1980)..................................................................6

*Molina-de la Villa v. Mukasey,*

    306 Fed. Appx. 389 (9th Cir. 2009) ...................................................... 10

*National Fed'n of Indep. Bus. v. Sebelius,*

    567 U.S. 519 (2012) ..........................................................................13, 14

*Olim v. Wakinekona,*

    461 U.S. 238 (1983) ............................................................................... 14

*Puckett v. United States,*

    556 U.S. 129 (2009) ............................................................................... 10

*Railroad Comm'n of Texas v. Pullman Co.,*

    312 U.S. 496 (1941) ..................................................................................1

*San Remo Hotel v. San Francisco,*

    145 F.3d 1095 (9th Cir. 1998).................................................................5

*Sandin v. Conner,*

    515 U.S. 472 (1995) ............................................................................... 12

*State v. Wagstaff,*

    164 Ariz. 485 (1990) .............................................................................. 13

*U.S. R.R. Retirement Bd. v. Fritz,*

    449 U.S. 166 (1980) ..................................................................................9

*United States v. Belgard,*

    694 F. Supp. 1488 (D. Or. 1988)........................................................... 10

*United States v. Narramore,*

    36 F.3d 845 (9th Cir. 1994) ................................................................... 10

*United States v. X-Citement Video, Inc.,*

    513 U.S. 64 (1994) ................................................................................ 14

*Vaught v. Kernan,*

    No-18-300, 2018 WL 4628369 (S.D. Cal. Sept. 27, 2018).................... 6

*Wilkinson v. Dotson,*

    544 U.S. 74 (2005) .................................................................................. 9

## <u>Statutes</u>

A.R.S. §13-716................................................................................................ 4

A.R.S. §13-718.........................................................................................4, 8, 9

A.R.S. §13-751........................................................................................2, 3, 8

A.R.S. §13-752........................................................................................2, 3, 8

A.R.S. §31-402............................................................................................... 3

A.R.S. §31-411............................................................................................. 16

A.R.S. §31-412............................................................................................... 3

A.R.S. §44-1604.11........................................................................................ 2

## <u>Rules</u>

Ariz. R. Crim. P. 32.1(c)............................................................................... 15

Fed. R. Civ. P. 19(a)(1) ................................................................................ 15

## <u>Other Authorities</u>

17A Charles Alan Wright et al., Federal Practice & Procedure §4248 ............ 7

1993 Ariz. Legis. Serv. Ch. 255 (S.B. 1049).................................................. 3

Defendant Charles L. Ryan in his official capacity as Director of the Arizona Department of Corrections ("the State") moves to certify the question of Plaintiff's eligibility for parole under state law to the Arizona Supreme Court, or for this Court to abstain. In the alternative, the State moves under Rules 12(b)(1) and (b)(6) to dismiss Plaintiff's first and second claims. In addition, the Court should also require Plaintiff to join the members of the Board of Executive Clemency, who are necessary parties under Rule 19.

## INTRODUCTION

This case is paradigmatically suited for certification to the Arizona Supreme Court. It involves a threshold, dispositive issue of Arizona law: whether Plaintiff is entitled to parole eligibility under state law based on certain language in his state criminal sentence. The answer to that question is both unsettled—no Arizona court has addressed it—and highly important, not just for this criminal defendant but likely hundreds of others with similar sentences. And if Plaintiff is right about these questions of state law, all of his federal claims will be moot. The issue is also plainly a sensitive one: the precedent it sets may result in hundreds of murderers being released on parole despite unambiguous (and conceded) statutory language barring their eligibility for it. And the calendar readily permits time for certification: even if Plaintiff prevails, he would not be eligible for parole until June 17, 2020.

This Court should accordingly certify the issue of Plaintiff's eligibility for parole (hereinafter, "Parole Eligibility") under state law to the Arizona Supreme Court and stay resolution of the remaining federal claims pending an answer to those certified questions. Alternatively, this Court should abstain under *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941).

If this Court declines to certify or abstain, it should dismiss Plaintiff's due process claim (Claim Two) under the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). Plaintiff admits that the governing Arizona law barred Parole Eligibility for him at the time of his sentence, but alleges that because of a purported defect in his sentence he is

nonetheless eligible for parole. That is precisely the sort of collateral challenge to a sentence/evasion of habeas that *Heck v. Humphrey* bars.

Should this Court reach the merits, Plaintiff's federal claims fail.[1] Plaintiff's equal protection claim (Claim One) fails because A.R.S. §13-718 rationally differentiates between defendants that have received binding promises from the State, and defendants who have not.

Plaintiff's due process claim lacks merit because Plaintiff does not have any liberty interest arising from his sentence, which lacks the requisite "explicitly mandatory language." In addition, Plaintiff lacks a cognizable liberty interest in process alone (*i.e.*, being considered for parole) rather than a substantive outcome (*i.e.*, actually receiving it). And even if Plaintiff has a cognizable liberty interest, the availability of post-conviction review is ample process to vindicate it.

## BACKGROUND

This case involves Plaintiff's claim of entitlement to Parole Eligibility after serving 25 years for his first-degree murder conviction. It is therefore useful to provide background on the relevant Arizona law and Plaintiff's criminal conviction and sentence.

### *Pre-1994 Law*

Prior to January 1, 1994, Arizona law made two relevant types of executive clemency available to those convicted of first-degree murder and sentenced to life (but not "natural life"): (1) parole and (2) commutation. Other forms of executive clemency exist, such as work furlough and work release, but they typically are not available to those convicted of murder. A.R.S. §§13-751(A); 13-752(A); 44-1604.11.

The standard for parole is more lenient than commutation. To be released on parole, a convict must show "there is a substantial probability that the applicant will

---

[1] Because the State is seeking certification of the state law issues, it has not moved to dismiss Claim III on the merits because it believes the state law issues are more properly decided by the Arizona Supreme Court. Claim Three does not involve any disputed issues of fact, however, and can be decided on the briefs. But that briefing should occur in the Arizona Supreme Court, not here.

remain at liberty without violating the law and that the release is in the best interests of the state." A.R.S. §31-412(A); Complaint ¶29. Parole can be granted by the Board of Executive Clemency ("Board") alone. *Id.*

In contrast, commutation requires showing "a substantial probability that when released the offender will conform the offender's conduct to the requirements of the law" and "clear and convincing evidence that the sentence imposed is clearly excessive." A.R.S. §31-402(C)(2); Complaint ¶29(a). Commutation can only be obtained with the concurrence of both the Board and the Governor. A.R.S. §31-402(B); Complaint ¶29(b).

Defendants convicted of first-degree murder could receive one of three sentences: (1) death, (2) natural life, barring any possibility of executive clemency (including parole/commutation), or (3) ordinary life, in which case executive clemency, such as parole, commutation and work furlough, would potentially be available after 25 years. A.R.S. §13-751(A); 13-752(A).

### *1993 Enactment*

In 1993, the Arizona Legislature enacted SB1049, which amended A.R.S. §41-1604.09 to abolish parole beginning in 1994. *See* 1993 Ariz. Legis. Serv. Ch. 255 S.B. 1049). Plaintiff admits that the effect of that enactment was to "eliminate parole for all offenses committed on or after January 1, 1994." Complaint ¶9.

There is thus no dispute that Arizona statutory law at all relevant times unambiguously forbade parole to anyone convicted of first-degree murder after 1993.

### *Conviction and Sentence*

On May 21, 1995, Plaintiff encountered Reynaldo Martinez outside of a Circle K. *Chaparro v. Bartos*, No. 03-701, 2010 WL 382889, at *1 (D. Ariz. Jan. 28, 2010), *aff'd*, 481 Fed. Appx. 313 (9th Cir. 2012). Plaintiff fired fifteen shots at Martinez, hitting him eight times (including four times in the back). *Id.* at *5. Martinez died as a result of those injuries. *Id.* at *1. Although Plaintiff argued he killed Martinez in self-defense, a jury convicted Plaintiff of first-degree murder. *Id.*

Although Arizona had abolished parole, Judge Peter T. D'Angelo sentenced Plaintiff to "life without possibility of parole for 25 years" in 1996. Complaint Ex. A. It appears that Judge D'Angelo used pre-1994 form language for the sentence, which had not been updated to reflect Arizona's abolition of parole. The State believes that there are potentially hundreds of sentences for defendants convicted of first-degree murder with similar language (hereinafter, "Legacy Sentences"). Haley Decl. ¶¶3-7. These sentences refer to "life without possibility of parole for 25 years" or similar formulation, when "life without possibility of any form of executive clemency for 25 years" would have more accurately reflected what Arizona law mandated.

It is undisputed that the sentencing judge lacked authority to issue any sentence that would make Plaintiff eligible for parole: Plaintiff admits that he "absolutely understands that [his] sentence is *unauthorized* by Arizona law" and that "[w]hen imposed, the trial court's sentence was unlawful or not authorized by state law because Arizona had eliminated parole." Complaint Ex. B; ¶15 (emphasis in original).

Plaintiff previously sought federal habeas relief, which this Court denied (and the Ninth Circuit affirmed). *See Chapparo*, 2010 WL 382889 at *1. Plaintiff's habeas petition did not raise any of the instant claims asserted here. *Id.*

### Subsequent Statutes

In 2014, Arizona reestablished the possibility of parole for juvenile offenders. *See* A.R.S. §13-716.

In 2018, the Arizona Legislature approved SB1211, which the Governor signed into law on April 30, 2018. *See* A.R.S. §13-718. Section 718 restored Parole Eligibility for those sentenced "pursuant to a plea agreement that contained a stipulation to parole eligibility … after serving the minimum number of calendar years that is specified in the sentence," if the plea agreement was entered "on or before August 3, 2018." A.R.S. §13-718.

SB1211 only applies if a binding promise regarding Parole Eligibility was made in a plea agreement. It does not apply to defendants who did not receive such commitments, whether they pled guilty or not guilty and went to trial.

### *Plaintiff's Complaint*

Plaintiff's Complaint raises three claims here: (1) a Section 1983 claim arguing that Section 718 violates the Equal Protection Clause, (2) a Section 1983 due process claim arguing that Plaintiff's sentence gives rise to a liberty interest that the State is denying without due process, and (3) a state law claim contending that Plaintiff is entitled to Parole Eligibility under state law.

For the reasons explained below, this Court should certify the state law issues underlying Claim III to the Arizona Supreme Court and stay adjudication of Claims One and Two pending an answer to the certified questions.

## ARGUMENT

### I. THIS COURT SHOULD CERTIFY PLAINTIFF'S STATE LAW CLAIM OR ABSTAIN

If Plaintiff's state law arguments are accepted, it would necessarily moot all of Plaintiff's federal constitutional claims (*i.e.*, there is no need to decide if the U.S. Constitution mandates Parole Eligibility for Plaintiff if state law already provides for it). Bedrock principles of comity, judicial restraint, and abstention all favor certification of the state law Parole Eligibility question to the Arizona Supreme Court or abstention.

#### A. The Requirements For Pullman Abstention Are Satisfied Here

Here all of the requirements for *Pullman* abstention are readily satisfied: "(1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear." *San Remo Hotel v. San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998).

*Sensitive Issues.* The first requirement is readily satisfied: "There is no question that a state's operation of its detention facilities involves a sensitive area of social policy,

an area into which the federal courts do not lightly intercede." *Manney v. Cabell*, 654 F.2d 1280, 1284 (9th Cir. 1980).[2]  Indeed, there are probably few issues more sensitive than the potential release of hundreds of felons convicted of first-degree murder.

**Federal Constitutional Questions Mooted.**  Plaintiff's constitutional claims would be irrelevant if he were to prevail on his claim that he has Parole Eligibility as a matter of state law—mooting whether federal law mandates his eligibility.

**State Law Is Unclear.**  No state (or federal) court has ever addressed whether those convicted of first-degree murder with Legacy Sentences, such as Plaintiff, are entitled to Parole Eligibility, either in a published or unpublished decision.  State law is thus "unclear" under *Pullman*.  *Courthouse News Serv. v. Planet*, 750 F.3d 776, 784 n.6 (9th Cir. 2014) (Third *Pullman* requirement was "plainly satisfied" where "[n]o published decision of a California court" had addressed the issue).

**B.      Although The Requirements For *Pullman* Abstention Are Satisfied, Certification Is Preferable Here**

Although all of the requirements for *Pullman* abstention are satisfied here, the State respectfully submits that certification of the relevant state law issues to the Arizona Supreme Court is preferable here to abstention.  Since certification has become widely available, certification has largely supplanted outright abstention under *Pullman*.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 75 (1997) ("Certification today covers territory once dominated by … '*Pullman* abstention[.]'").  And certification is often more desirable as it "reduc[es] the delay, cut[s] the cost, and increase[s] the

---

[2] *See also Vaught v. Kernan*, No-18-300, 2018 WL 4628369, at *2 (S.D. Cal. Sept. 27, 2018) ("The social policy concerning prison sentencing … is a sensitive area that has traditionally been regulated through state law."); *Bowman v. Schwarzenegger,* No. 07-2164, 2009 WL 799274, at *7 (E.D. Cal. Mar. 23, 2009), *adopted* 2009 WL 1079900 (E.D. Cal. Apr. 16, 2009), *aff'd* 334 Fed. Appx. 850 (9th Cir. 2009) ("The complaint in this case 'touches a sensitive issue of social policy,' for it seeks to involve the federal court in state decisions involving appropriate placement of parolees[.]").*Hughey v. Kernan*, No. 18-313, 2019 WL 329535, at *7 (S.D. Cal. Jan. 24, 2019), *adopted* 2019 WL 1040329 (S.D. Cal. Mar. 5, 2019) ("[P]olicies concerning prison sentencing … implicate important state interests." (abstaining under *Younger*)).

6

assurance of gaining an authoritative response." *Id.*; *id.* at 79 (certification does not "entail the delays, expense, and procedural complexity that generally attend abstention decisions.").

As a result, it is "appropriate to use certification" even in "marginal cases of *Pullman*-type abstention." 17A Charles Alan Wright et al., Federal Practice & Procedure §4248 (3d ed.) (2007). And certification is particularly appropriate where there are "[n]ovel, unsettled questions of state law[.]" *Arizonans*, 520 U.S. at 79.

Certification is particularly warranted here as (1) the state law questions presented are novel, (2) the issues are purely ones of law that require no factual development, (3) the issues are manifestly important and likely to repeat (with likely hundreds of other prisoners convicted of first-degree murder with Legacy Sentences), and (4) the state law issues could avoid the need to decide the constitutionality of state statutes and sentences, serving the interests of judicial restraint, federalism, comity, and judicial economy. Moreover, because there are potentially hundreds of Legacy Sentences, the need for uniformity is particularly great, and only the Arizona Supreme Court can provide a conclusive answer as to what Arizona law provides. Certification is further warranted as Plaintiff's due process claim is largely predicated on construing state law. *Infra* at 11-14.

Certification will cause Plaintiff no prejudice. Even if Plaintiff were to prevail in this litigation, he would not be eligible for parole until June 2020. Complaint ¶20. There is thus sufficient time to receive an answer from the Arizona Supreme Court *and* adjudicate, if necessary, the remaining federal issues.

## C. Alternatively, *Pullman* Abstention Is Warranted

If this Court declines to certify, it should instead abstain so that state courts can resolve the potentially dispositive state law issues first. Indeed, this is a classic case for *Pullman* abstention—a constitutional ruling would be completely gratuitous if Plaintiff were correct about wholly unsettled issues of state law.

## II. CLAIM TWO IS BARRED BY *HECK V. HUMPHREY*

As the Supreme Court has explained, a section 1983 claim is procedurally barred where it would "necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). That is precisely the case here for Claim Two: it is directly premised on his sentence being invalid and incapable of effectuating what Arizona law concededly mandates—*i.e.* complete denial of Parole Eligibility.

Here there is no dispute what the most lenient, valid sentence available for first-degree murder committed after 1993 is: a life sentence with no possibility of parole, but with commutation available after 25 years. A.R.S. §13-751; 13-752.[3] Plaintiff directly admits as much, conceding that "[i]n 1993, the Arizona Legislature amended A.R.S. §41-1604.09 to eliminate parole for all offenses committed on or after January 1, 1994." Complaint ¶9; *id.* ¶22.

Any proper and valid sentence for first-degree murder, free from legal defects under Arizona law, would thus bar Parole Eligibility entirely. Plaintiff's Claim Two contends that *his sentence*, however, makes him eligible for parole after 25 years. Complaint ¶¶15, 19, 32-34. But that is just another way of saying that his sentence is invalid and defective, since a valid sentence would necessarily bar Parole Eligibility. And that not only is the necessary premise of Plaintiff's second claim, but Plaintiff squarely admits as much: "When imposed, the trial court's sentence *was unlawful or not authorized by state law* because Arizona had eliminated parole for offenses committed on or after January 1, 1994," Complaint ¶15 (emphasis added) and "I absolutely understand that my sentence is *unauthorized* by Arizona law," Complaint Ex. B (emphasis in original).[4] Those candid admissions thus make clear that *Heck v. Humphrey* bars Claim

---

[3] If the victim is under 15 years of age or an unborn child, commutation would not be available until 35 years into the sentence. A.R.S. §13-751(A)(2).

[4] In contrast, Plaintiff's first claim is predicated on the alleged invalidity of a statute (A.R.S. §13-718), rather than Plaintiff's sentence. It therefore is not barred by *Heck v. Humphrey* (although its resolution should be stayed pending certification/abstention and it fails on the merits in any event, *supra* at 5-7; *infra* at 9-10).

Two, since it at least "necessarily impl[ies]"—and indeed explicitly admits its reliance on—the alleged "invalidity of his conviction or sentence." 512 U.S. at 487.[5]

## III. PLAINTIFF'S EQUAL PROTECTION CLAIM (CLAIM ONE) FAILS

If this Court reaches the merits of Plaintiff's federal claims, they should be dismissed under Rule 12(b)(6).[6]

### A. Section 718 Distinguishes Based On Receipt Of Binding Promises, Not Guilty Pleas

Plaintiff's Claim One fundamentally mischaracterizes A.R.S. §13-718: it does *not* distinguish between convicts based on whether they "exercised his constitutional right to trial." Complaint ¶30. Those who simply pled guilty are not entitled to Parole Eligibility under Section 718. Instead, Section 718 confers Parole Eligibility only to those to whom the State has made a binding promise that parole would be available. *See* A.R.S. §13-718.

Distinguishing between those to whom the State has made enforceable promises and those to whom it has not is thoroughly rational, and easily satisfies rational basis review. *See*, *e.g.*, *Bowen v. Gilliard*, 483 U.S. 587, 601-02 (1987) ("A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.").[7] Indeed, that distinction is the very essence of government contract law, where the State pays those with whom it has made reciprocally binding promises, and does not pay those who gratuitously provide unsolicited services to the government.

Indeed, the distinction drawn by Section 718 is particularly rational because defendants would be permitted to withdraw their guilty pleas if the State refused to honor

---

[5] Contrary to Plaintiff's allegation (¶7), *Wilkinson v. Dotson*, 544 U.S. 74 (2005) does not allow a section 1983 claim here. In *Wilkinson*, prisoners brought a section 1983 action, claiming that Ohio used the wrong procedure when it evaluated their parole eligibility. *Id.* at 76-77. Significantly, the relief sought neither implied the invalidity of their sentences, nor did it make them eligible for parole consideration for which they were otherwise ineligible. But the same is not true here.

[6] The State reads this Court's March 1, 2019 Order (Doc. 7) solely as resolving this Court's mandatory screening inquiry under 28 U.S.C. §1915A(a), and not as rejecting, *sua sponte*, arguments that the State had not yet made.

[7] *See also U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980) ("Where, as here, there are plausible reasons for [the legislature's] action, our inquiry is at an end.").

its promises of Parole Eligibility.  *See*, *e.g.*, *Puckett v. United States*, 556 U.S. 129, 137 (2009).  And re-trying murder convictions with two-decade-plus-old evidence is a distinctly unenviable undertaking.

These plainly rational considerations are entirely absent for those who received no such binding promises and have no ability to withdraw their guilty pleas, however.  The State has thus rationally declined to extend Parole Eligibility to them.

Because the *actual* distinction drawn by Section 718 is plainly rational, and murder convicts are not a suspect class, Plaintiff's Claim One fails.

### B. Even Section 718 Distinguished Purely Based On Guilty/Non-Guilty Pleas, It Would Still Pass Constitutional Muster

Even if Section 718 actually did distinguish based on guilty/non-guilty plea alone, rather than receipt of specific promises, it still would be constitutional.  The State has important interests in offering preferential treatment in return for pleading guilty: "[H]onoring such past reliance could encourage future plea bargain agreements," thus furthering the important State interest in the functioning of its criminal justice system. *Molina-de la Villa v. Mukasey*, 306 Fed. Appx. 389, 392-93 (9th Cir. 2009).  The potential for favorable terms in return for pleading is a major inducement for defendants to plead guilty, and this longstanding practice is constitutional.  *United States v. Narramore*, 36 F.3d 845, 847 (9th Cir. 1994) ("Incentives for plea bargaining are not unconstitutional merely because they are intended to encourage a defendant to forego constitutionally protected conduct.").  Indeed, "The courts of this Circuit have refused to invalidate as punishment for the exercise of constitutional rights, the practice of imposing stiffer sentences where defendants have not fully accepted responsibility for their action." *United States v. Belgard*, 694 F. Supp. 1488, 1497 (D. Or. 1988), *aff'd* 895 F.2d 615 (9th Cir. 1990).

## IV. PLAINTIFF'S DUE PROCESS CLAIM (CLAIM TWO) FAILS

Plaintiff's due process claim fails for two fundamental reasons:  (1) he has no liberty interest at issue and (2) the State provides sufficient process.

**A.      Plaintiff Has No Liberty Interest In Parole Eligibility**

A cognizable liberty interest is a *sine qua non* for Plaintiff's due process claim. *Carver v. Lehman*, 558 F.3d 869, 872 (9th Cir. 2009).[8]  "A liberty interest may arise from either of two sources: the due process clause itself or state law." *Id.*  Neither applies here.

There is no liberty interest arising from the Due Process Clause since "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,* 442 U.S. 1, 7 (1979); *accord Carver*, 558 F.3d at 872.

Nor does state law create a liberty interest because (1) there is no "explicitly mandatory language" in Plaintiff's sentence and (2) Plaintiff's claimed liberty interest in a procedure (*i.e.*, being considered for parole) is not cognizable.

**1.      Plaintiff's Sentence Lacks The Requisite "Explicitly Mandatory Language" That Could Create A Liberty Interest**

"In order to create a constitutionally protected liberty interest, the statute [or other operative text] must contain '*explicitly mandatory language*.' *Carver*, 558 F.3d at 874-75 (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)) (cleaned up) (emphasis added).  This "mandatory language rule" is "well-established."  *Id.* at 872-73.  Indeed, the Ninth Circuit explained that "the unique 'shall/unless' formula of the Nebraska statute was decisive in *Greenholtz*," and "[n]o protected entitlement to release exists unless a state scheme includes that formula."  *Baumann v. Arizona Dept. of Corr.*, 754 F.2d 841, 844 (9th Cir. 1985).

Arizona statutory law does contain one explicit mandate, but it cuts directly against Plaintiff:  it expressly *forbids* parole for all crimes committed after 1993.  *Supra* at 3.  It therefore not only (1) does not create a liberty interest by itself, but also (2) stands

---

[8]  Plaintiff's Complaint alludes to a purported "property interest in parole eligibility." Complaint ¶33.  But Plaintiff does not explain how a property interest could arise, particularly as criminal sentences are not conventionally regarded as "property."

as an obvious (and ultimately insurmountable) barrier to any other creature of Arizona law creating a liberty interest in the teeth of that express prohibition.

Plaintiff points to the language of his sentence as creating such an interest. Complaint ¶33. The operative language sentenced Plaintiff to "life without possibility of parole for 25 years." *Id.* ¶14.

Plaintiff's sentence is explicit/unambiguous in one respect and ambiguous in another. It is unambiguous in that it explicitly *prohibits* parole for 25 years. But as to what happens after 25 years, it is ambiguous and contains no "explicitly mandatory language" mandating eligibility for parole.

Plaintiff relies on the negative implication of "without possibility of parole for 25 years" to argue that there is an affirmative right to parole consideration after 25 years. Reliance on negative implications is admittedly *one* permissible tool of textual interpretation for ambiguous language, but it is hardly the only applicable one here. Nor can it transform ambiguous language into an explicit mandate.[9]

In contrast, a well-established canon of construction is to read texts in context, as "[t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). "Words are not pebbles in alien juxtaposition; they have only a communal existence; and … in their aggregate take their purport from the setting in which they are used." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991). Thus, even where nicotine would plainly appear to be a "drug" under a literal reading of a federal statute, context can make clear that it nonetheless is not. *Brown & Williamson*, 529 U.S. at 161.

Here context indicates that Plaintiff's sentencing judge likely used "without possibility of parole for 25 years" as shorthand for when all forms of applicable executive

---

[9] The Supreme Court has expressly cautioned against relying on negative inferences when evaluating whether state law regarding incarceration creates liberty interests, explaining that relying on "negative inferences from mandatory language" "may be entirely sensible in the ordinary task of construing a statute" but is "good deal less sensible in the case of a prison regulation[.]" *Sandin v. Conner*, 515 U.S. 472, 481 (1995).

clemency—*e.g.*, parole, commutation, work furlough, as applicable—became available to Chaparro, assuming they otherwise applied (and parole being abolished, it would not). Indeed, sentencing judges, like Plaintiff's, appear to have continued to use pre-1993 formulation of words even after parole was abolished in 1994. That is regrettable from a clarity perspective. But context makes clear the judges' intent: the superior courts were not engaged in hundreds of acts of outright and lawless defiance of the Arizona Legislature; they were simply continuing to use the same, albeit somewhat-imprecise, language they had long used before. And that language should be given the same effect: to mark the time when all applicable forms of executive clemency become available— which notably may ultimately include parole, as the Legislature has restored parole availability for juvenile offenders and those with plea bargains promising Parole Eligibility. *Supra* at 4-5.

Plaintiff's reading of his sentence also squarely contravenes the well-established canon that "every reasonable construction must be resorted to, in order to save a [legal provision] from unconstitutionality.'" *National Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 521 (2012) (citation omitted). Plaintiff's reading of his and similar sentences not only flouts Arizona statutory law, but creates grave and obvious separation-of-powers constitutional violations. Under the Arizona constitution, parole is an exclusively legislative and executive function: "the judicial branch of government in Arizona has no authority to grant any person parole." *State v. Wagstaff*, 164 Ariz. 485, 487-88 (1990). And "vesting the judiciary with the power to impose parole terms and conditions encroaches on the executive branch and consequently is unconstitutional." *Id.* at 490.

Put simply, the Arizona Judiciary has no constitutional authority to make parole available to anyone when imposing a sentence. Plaintiff's reading of his sentence (and all Legacy Sentences) means that Arizona courts have necessarily engaged in hundreds of flagrant violations of constitutional separation-of-powers mandates. That flouts the Supreme Court's command that where a text "has two possible meanings, one of which violates the Constitution, courts should adopt the meaning that does not do so." *Sebelius*,

13

567 U.S. at 562. Indeed, Plaintiff's interpretation violates this canon twice: reading his sentence to violate the Arizona Constitution as a predicate for arguing that it *also* violates the U.S. Constitution.

Instead of two gratuitous constitution violations, this Court should adopt the reading consistent with both the U.S. and Arizona Constitutions. Indeed, it must do so unless that reading is "plainly contrary to the intent" of the drafter (here the sentencing judge). *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). Reading Plaintiff's sentence simply to make only *proper* forms of executive clemency (*i.e.*, those not explicitly prohibited by law) available after 25 years is fully consistent with the intent of the sentencing judge, and certainly is not "plainly contrary" to it.

\* \* \* \* \*

Applying ordinary canons of construction, it is clear that Plaintiff's sentence does not supply the requisite "explicitly mandatory language" that could create a cognizable liberty interest. *Carver*, 558 F.3d at 874-75. Plaintiff's due process claim thus necessarily fails.

### 2. Plaintiff Lacks A Liberty Interest In Being Considered For Parole

Plaintiff does not have a cognizable liberty interest for another reason: the Ninth Circuit has held that the "'expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause' of the Fourteenth Amendment." *Carver*, 558 F.3d at 875 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250-51 n.12 (1983)). Plaintiff's Claim Two does not assert any substantive entitlement to actually receive parole. Instead, it merely alleges a liberty interest in being *considered* for parole. Complaint ¶33; Complaint Prayer ¶A.

But the right to be considered for parole (and receive a hearing on that issue) is merely an "expectation of receiving process," which is insufficient under *Carver/Olim*. Plaintiff's alleged liberty interest is thus not legally cognizable.

## B. Post-Conviction Review Provides Sufficient Process

Even if Plaintiff possessed a cognizable liberty interest in Parole Eligibility, that would only oblige the State to provide adequate procedures to address potential deprivations. *Carver*, 558 F.3d at 872. Arizona's post-conviction review procedures easily provide sufficient process here: Under Arizona Rule of Criminal Procedure 31.1(c), a defendant can seek relief alleging that "the sentence imposed … is … not in accordance with the sentence authorized by law." Ariz. R. Crim. P. 32.1(c). That is Plaintiff's claim in a nutshell: the sentence imposed (denying Parole Eligibility) is allegedly not "in accordance with the sentence authorized by law" (*i.e.*, in Plaintiff's view, one that allows for Parole Eligibility).

Plaintiff's Complaint does not allege that this procedural avenue is constitutionally insufficient to provide due process in any manner. And because post-conviction review provides sufficient process, Claim Two fails.

## V. PLAINTIFF SHOULD BE REQUIRED TO JOIN THE BOARD

Plaintiff should also be ordered, under Rule 19, to add the members of the Board of Executive Clemency (the "Board Members") in their official capacities. The application of Rule 19 involves three inquiries: (1) whether a party is required; (2) whether the party can be joined in the action; and (3) if the absent party cannot be joined, whether the action may proceed in the party's absence. *Havasupai Tribe v. Anasazi Water Co. LLC*, 321 F.R.D. 351, 354 (D. Ariz. 2017). The application of these factors to the Board Members is straightforward here.

The Board Members are necessary because, in their absence, "the court cannot accord complete relief among existing parties[.]" Fed. R. Civ. P. 19(a)(1). "Complete relief 'is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action.'" *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013). For Plaintiff to be considered for parole, not only must he be certified for parole, but the Board of Executive Clemency must also hold a parole hearing. A.R.S. §31-411(A)-(B). As such, unless the Board Members are

1  joined as parties, any relief the Court might order would be "hollow" since the Board

2  Members could still refuse to consider Plaintiff for parole consistent with A.R.S. §41-

3  1604.09.

4          Not only are the Board Members necessary parties, but there is also no

5  impediment to Plaintiff joining them to this lawsuit.  As such, because joining the Board

6  Members is both necessary and feasible, the Rule 19 inquiry ends.  The Court should

7  order Plaintiff to join the Board Members as parties.

8                              **CONCLUSION**

9          The issue of whether Plaintiff is eligible for parole under state law should be

10 certified to the Arizona Supreme Court.  Resolution of Plaintiff's federal claims should

11 be stayed pending the Arizona Supreme Court's resolution of the certified question.

12

13 Respectfully submitted this 27th day of March, 2019.

14                              MARK BRNOVICH
                               ATTORNEY GENERAL
15

16                              By:  s/ Drew C. Ensign
                               Drew C. Ensign (No. 25463)
17                             Oramel H. (O.H.) Skinner (No. 32891)
                               Brunn (Beau) W. Roysden III (No. 28698)
18                             Rusty D. Crandell (No. 026224)
                               Anthony R. Napolitano (No. 034586)
19                             Robert J. Makar (No. 33579)

20
                               *Attorneys for Defendant Charles L. Ryan,*
21                             *in his official capacity as Director of the*
                               *Arizona Department of Corrections*
22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of March, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for all parties are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing.

 s/ Drew C. Ensign
*Attorney for Defendant Charles L. Ryan, in his official capacity as Director of the Arizona Department of Corrections*