Lindsay Herf, AZ Bar No. 027554
Robert Dormady, AZ Bar No. 031755
Katherine Puzauskas, AZ Bar No. 026345
**Arizona Justice Project**
411 N. Central Ave., Suite 600
Phoenix, AZ 85004-2139
Lindsay.Herf@azjusticeproject.org
Katherine.Puzauskas@asu.edu
Robert.Dormady@asu.edu

Howard R. Cabot, AZ Bar No. 006669
Randy McDonald, AZ Bar No. 032008
Austin C. Yost, AZ Bar No. 034602
**Perkins Coie LLP**
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
HCabot@perkinscoie.com
RMcDonald@perkinscoie.com
AYost@perkinscoie.com
DocketPHX@perkinscoie.com

*Attorneys for Plaintiff Abelardo Chaparro*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Abelardo Chaparro,<br><br>Plaintiff,<br><br>v.<br><br>Charles L. Ryan, in his official capacity as Director, Arizona Department of Corrections,<br><br>Defendant. | No. 2:19-cv-00650-DWL-MHB<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR CERTIFICATION OR DISMISSAL**<br><br>**(Oral Argument Requested)**<br><br>(Assigned to Hon. Dominic W. Lanza) |

Plaintiff Abelardo Chaparro ("Chaparro") respectfully submits this Response to Defendant Charles L. Ryan's ("the State") Motion for Certification or Dismissal. Chaparro requests that this Court deny all the State's Motions for the reasons set forth below.

In 1993, the Arizona Legislature abolished parole. It did so by appending the phrase "This section applies to . . . [a] person who commits a felony offense before January 1, 1994" to the statute that regulates parole eligibility in Title 41 of the Arizona Revised

143913219.1

Statutes. The Legislature did not, and to this day has not, amended the sentencing statute governing first-degree murder in Title 13, which still provides three possible sentences for that crime: death, "natural life," or "life." The only statutory difference between "natural life" and "life" is the possibility of "release." For that possibility to be meaningful in any way, it must mean parole, and not commutation.

Judges and practitioners justifiably expect that the sentencing provisions of Title 13 mean what they say. So, when Chaparro was sentenced to "life" with the "possibility of parole" in accordance with A.R.S. § 13-751 for an offense that had occurred after 1994, nobody—not the prosecutor, the judge, or the defense attorney—questioned that this meant that Chaparro would be entitled to the "possibility of parole" after serving twenty-five years of his sentence. And in reliance on that possibility, Chaparro did what we hope all incarcerated individuals do—he took classes, worked, and has generally been a model inmate. He did all of this with an eye toward achieving parole.

But now, twenty-four years after Chaparro was sentenced to life with the "possibility of parole"—a sentence to which the State did not object and which became final by operation of well-settled Arizona law—the State wants to tell Chaparro that the "possibility" of parole was illusory. The State's deeply cynical Motion misconstrues the facts and the law and completely ignores thirty-year-old Arizona case law that conclusively decides the issue in this case. Chaparro is not asking to be set free. Nor is he asking that this Court set free "hundreds of murderers." Chaparro is asking that he be given the opportunity to have a meaningful parole hearing, an opportunity he was promised almost twenty-five years ago, that is guaranteed under Arizona law, and toward which he has been working almost his entire adult life.

**FACTUAL BACKGROUND**

**The Arizona Legislature abolishes parole in Title 41 but does not amend the first-degree murder sentencing statute in Title 13.**

The Arizona Legislature abolished parole in 1993 when it amended the statute that governs parole eligibility in Title 41 of the Arizona Revised Statutes to provide: "This

section applies to . . . [a] person who commits a felony offense before January 1, 1994." A.R.S. § 41-1604.09(I)(1); *see also* 1993 Ariz. Sess. Laws, ch. 255, § 88 (1st Reg. Sess.). But the Legislature confusingly did not, and still has not, amended the sentencing statute governing first-degree murder convictions in Title 13 to reflect the abolition of parole—in fact, that statute explicitly referenced, and still does explicitly reference, "parole." *See* A.R.S. § 13-751(A).

The sentencing statute governing first-degree murder convictions in Title 13 provides three possible sentences for that crime: (1) death, (2) "natural life," and (3) "life." *See* A.R.S. § 13-751(A). A defendant who is sentenced to "natural life" is "not eligible for commutation, parole, work furlough, work release or release from confinement on any basis." A.R.S. § 13-751(A)(1)–(3). On the other hand, a defendant who is sentenced to "life" cannot be "released on any basis" until serving 25 or 35 years in prison, depending on the age of the victim. A.R.S. § 13-751(A)(2)–(3). As such, the only statutory difference between a "life" and a "natural life" sentence is the possibility of "release." *See* A.R.S. § 13-751(A)(1)–(3).

**Chaparro was convicted of first-degree murder and sentenced to "life without possibility of parole for 25 years."**

Chaparro was charged with first-degree murder in connection with events that occurred on May 21, 1995. Compl. ¶ 10. Chaparro exercised his right to trial by jury and was ultimately convicted of one count of first-degree murder on July 25, 1996. *Id.* ¶ 13. Chaparro was sentenced to "life without possibility of parole for 25 years." *Id.* ¶ 14; *see also* Compl. Ex. A (Minute Entry Dated Dec. 6, 1996). When imposed, the trial court's sentence—one that provides for the "possibility of parole" after 25 years—was unlawful because the Arizona Legislature had already abolished parole for offenses committed on or after January 1, 1994. Compl. ¶ 15; *see also* A.R.S. § 41-1604.09(I)(1).

But the State did not request that the trial court modify Chaparro's sentence to delete the unauthorized parole-eligibility provision, and the trial court did not modify the sentence on its own motion. Compl. ¶ 16. Moreover, although Chaparro appealed his conviction on

other grounds, the State did not appeal or cross-appeal on any issue. *Id.* The Arizona Court of Appeals affirmed Chaparro's conviction and sentence, and the Arizona Supreme Court declined to review the conviction and sentence. *Id.* ¶¶ 17–18. Yet, despite his sentence, the State has refused to recognize Chaparro's parole eligibility and set a parole eligibility date. *Id.* ¶¶ 22–24.

**The Arizona Legislature created a remedy that applies to similarly situated prisoners, but not to Chaparro.**

In 2018, the Arizona Legislature enacted A.R.S. § 13-718. *Id.* ¶ 26. That statute provides that "a person who was convicted of first degree murder and who was sentenced to life with the possibility of parole after serving a minimum number of calendar years *pursuant to a plea agreement that contained a stipulation to parole eligibility* is eligible for parole after serving the minimum number of calendar years that is specified in the sentence." A.R.S. § 13-718(A) (emphasis added). Because Chaparro was not sentenced "pursuant to a plea agreement that contained a stipulation to parole eligibility," he is not eligible for a parole eligibility date pursuant to that statute. *See id.*

## ARGUMENT

The State makes three motions: first, that this Court certify a state law question to the Arizona Supreme Court or, in the alternative, abstain; second, that it dismiss Claims One and Two of Chaparro's Complaint; and third, that it require Chaparro to name the Board of Executive Clemency ("the Board") under Federal Rule of Civil Procedure ("FRCP") 19(a)(1)(A) and (a)(2). This Court should deny all these motions.

**I.      THIS CASE DOES NOT RAISE NOVEL ISSUES OF STATE LAW AND IS INAPPROPRIATE FOR EITHER CERTIFICATION OR ABSTENTION.**

The State's requests for certification and *Pullman* abstention both fall flat for the same reason—the Arizona Supreme Court already decided in *State v. Dawson*, 164 Ariz. 278, 792 P.2d 741 (1990), that a criminal defendant's illegally lenient sentence becomes part of the final judgment. As the Arizona Supreme Court explained, when the State does not timely challenge a defendant's illegally lenient sentence, whether in the trial court or in

the Arizona Court of Appeals, no court has subject matter jurisdiction to modify it, and that sentence is "subsumed into the final judgment." *Dawson*, 164 Ariz. at 280–86 & n.1, 792 P.2d at 743–49. Simple as that. Arizona state law is clear, and *Dawson* is "controlling precedent" that bars the State's requests to certify and abstain. *See* A.R.S. § 12-1861.

### A. The requirements to certify a question to the Arizona Supreme Court are absent because the Arizona Supreme Court's *Dawson* decision is "controlling precedent."

A district court may certify a question to the Arizona Supreme Court only when a proceeding before the district court involves a question of Arizona law (1) that "may be determinative of the cause then pending" and (2) "to which it appears to the [district court] there is no controlling precedent" in Arizona Supreme Court or Arizona Courts of Appeals decisions. A.R.S. § 12-1861. Of course, a district court has discretion whether to certify a question to a state supreme court. *See, e.g.*, *White v. Celotex Corp.*, 907 F.2d 104, 106 (9th Cir. 1990. But in all cases, a district court may only exercise its discretion when "there is no controlling precedent" that already answers the certified question. A.R.S. § 12-1861; *see also City of Houston v. Hill*, 482 U.S. 451, 471 (1987) ("It would be manifestly inappropriate to certify a question where . . . there is no uncertain question of state law whose resolution might affect the pending federal claim."); *Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1068 (D. Ariz. 2014) ("A basic prerequisite for a court to certify a question to the Arizona Supreme Court is the existence of a pending issue of Arizona law not addressed by relevant Arizona authorities.").

Here, the Arizona Supreme Court addressed the relevant question almost thirty years ago. In *Dawson*, "the trial court failed to follow mandatory sentencing provisions," which resulted in the defendant receiving "an illegally lenient sentence." *State v. Anderson*, 171 Ariz. 34, 35, 827 P.2d 1129, 1130 (1992). The defendant "appealed his conviction on other grounds," and the State "did not cross-appeal from the illegally lenient sentence." *Id.* The State asked the Supreme Court "to hold that appellate courts have a duty to correct an illegally lenient sentence that appears on the appellate record, even though the correction results in detriment to defendant as a result of his own appeal, and even in the absence of

an appeal or cross-appeal by the state." *Dawson*, 164 Ariz. at 280, 792 P.2d at 743. The Court refused, and instead concluded that, "[i]n the absence of a timely appeal or cross-appeal by the state seeking to correct an illegally lenient sentence, an appellate court has no subject matter jurisdiction to consider that issue." *Id.* at 286, 792 P.2d at 749. In the absence of such jurisdiction, said the Court, no court can "correct a sentencing error that inures to the detriment of a criminal defendant." *Id.*

The Arizona Supreme Court observed that Arizona law has two "jurisdictional prerequisite[s]" that are required for the State to appeal in a criminal case: (1) the State's alleged grounds for the appeal "must be those specified in a jurisdictional statute," and (2) the State must timely file "a notice of appeal or cross-appeal." *Id.* at 280, 792 P.2d at 743. When both of those jurisdictional prerequisites are present, said the Supreme Court, a court has the "jurisdictional power" to "consider" and "correct" a sentencing error. *Id.* at 281, 792 P.2d at 744. Not so when one of those jurisdictional prerequisites is absent. *Id.* A judgment "becomes final" when "the time to appeal has passed, unless further post-conviction relief is sought."[1] *Id.* at 283, 792 P.2d at 746. Thus, when the State chooses not to timely challenge a defendant's illegally lenient sentence, whether in the trial court or on appeal, one "jurisdictional prerequisite" is absent, and no court has subject matter jurisdiction to modify the sentence. *Id.* at 280, 792 P.2d at 743.

In this case, Chaparro received an illegally lenient sentence—one that provides for the "possibility of parole" after 25 years even though the Arizona Legislature had already

---

[1] Contrary to the State's highly misleading suggestion (at 15) that Chaparro can obtain the relief requested in this case through Arizona's post-conviction relief procedures, and specifically through Arizona Rule of Criminal Procedure 32.1(c), those procedures generally, and that provision specifically, are actually completely irrelevant to the issues here. Rule 32.1(c) provides a defendant a remedy when "the sentence imposed exceed[ed] the maximum authorized by law, or is otherwise not in accordance with the sentence authorized by law." Ariz. R. Crim. P. 32.1(c). The Rule is intended to allow a defendant to attack a sentence even though the defendant does not contest the validity of the underlying conviction. *See* Ariz. R. Crim. P. 32.1. Put another way, this Rule protects defendants from illegally harsh sentences imposed to their detriment. Chaparro does not claim that the sentence imposed on him "exceed[ed] the maximum authorized by law" or is "otherwise not in accordance with the sentence authorized by law." Instead, Chaparro requests that the State recognize the sentence that was imposed.

abolished parole. But the State did not request that the trial court modify Chaparro's sentence, and the State also did not challenge Chaparro's sentence in a timely appeal in the Arizona Court of Appeals. Compl. ¶ 16. Chaparro's sentence, whether "*right or wrong*," was therefore "subsumed into the final judgment." *See Dawson*, 164 Ariz. at 283, 792 P.2d at 746 (emphasis added).

The State strangely seeks to keep the Arizona Supreme Court's almost three-decade-old *Dawson* decision a secret by ignoring it entirely. One looks in vain in the State's 16-page Motion for a single citation to *Dawson*—the Motion is devoid of any mention of it—even though Chaparro explicitly and repeatedly referenced *Dawson* in the Complaint. Compl. ¶¶ 19, 32, 33, 35, 36. Rather than make a futile attempt to sidestep *Dawson*'s broad strokes analysis, the State instead buries its head in the sand and narrowly construes the issue in this case as relating specifically to Chaparro's sentence. The State asserts (at 6) that Arizona law is somehow "unclear" because "[n]o state (or federal) court has ever addressed whether those convicted of first-degree murder with Legacy Sentences, such as Plaintiff, are entitled to Parole Eligibility." But this fact-based distinction is beside the point.

In *Dawson*, the Arizona Supreme Court conclusively explained the circumstances under which *any* criminal defendant's illegally lenient sentence becomes part of the final judgment under Arizona law. In the ensuing thirty years, the Arizona Legislature has not amended any relevant statute, and the Arizona Supreme Court has not amended any relevant court rule in a way that would question or cast doubt on the Court's analysis in that decision.[2] So, under well-established, settled, and clear Arizona law—*Dawson*—a

---

[2] Although the Arizona Legislature has not amended A.R.S. § 13-4032(5), the statute that authorizes the State to appeal "[a] sentence on the grounds that it is illegal," in a way that would undermine the Arizona Supreme Court's *Dawson* decision, the Legislature has amended A.R.S. § 13-4032 multiple times since that opinion was published. Because the Legislature has amended A.R.S. § 13-4032 post-*Dawson*, but not with an eye toward affecting *Dawson*, this Court can presume that the Legislature approved of *Dawson*. *See Galloway v. Vanderpool*, 205 Ariz. 252, 256 ¶ 17, 69 P.3d 23, 27 (2003) ("If the legislature amends a statute after it has been judicially construed, but does not modify the statute in a manner that changes the court's interpretation, [the Arizona Supreme Court] presume[s] the legislature approved of the court's construction and intended that it remain a part of the statute."). So too with respect to the Arizona Supreme Court's interpretation of the Arizona Rules of Criminal Procedure in *Dawson*. *See id.*

defendant who receives an illegally lenient sentence that the State does not timely challenge is entitled to receive that sentence because it is "subsumed into the final judgment," regardless of what that specific sentence provides. *See Dawson*, 164 Ariz. at 283, 792 P.2d at 746. This Court should not reward or condone the State's back-door attempt to relitigate *Dawson* itself by requesting certification here. *Dawson* is "controlling precedent" that bars the State's request to certify. *See* A.R.S. § 12-1861.

**B.	The requirements for *Pullman* abstention are absent because the Arizona Supreme Court's *Dawson* decision answers the dispositive state law question raised in this case.**

A district court must find that three factors are present to apply *Pullman* abstention: (1) "The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open"; (2) "Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy"; and (3) "The possibly determinative issue of state law is doubtful." *Privitera v. Cal. Bd. of Med. Quality Assurance*, 926 F.2d 890, 895 (9th Cir. 1991) (internal quotation marks and citations omitted). *Pullman* abstention is an "extraordinary and narrow exception" to a district court's general duty to "adjudicate a controversy that is properly before it." *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003) (internal quotation marks and citation omitted); *see also Harris*, 993 F. Supp. 2d at 1066 (noting that "*Pullman* abstention is available only in narrowly limited, special circumstances"). As a result, "*Pullman* abstention should rarely be applied" out of due respect "to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims." *Porter*, 319 F.3d at 492 (internal quotation marks and citation omitted). These principles carry enhanced force in this case because "[a]bstention is not favored in section 1983 cases." *Toussaint v. Yockey*, 722 F.2d 1490, 1495 (9th Cir. 1984).

For all the reasons set out in the preceding section, the third *Pullman* requirement is patently not present here. The State's cramped construction of the issue in this case (at 6) is a thinly veiled attempt by the State to avoid the Arizona Supreme Court's *Dawson* decision. But the "fact that a state court has not ruled on the precise issue at stake in this case does

not mean that the proper resolution of the state law issue is 'uncertain.'" *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 940 (9th Cir. 2002) (citation omitted). This Court does not need a crystal ball to predict how the Arizona Supreme Court would decide the state law issue here—that Court already explained the circumstances under which an Arizona criminal defendant's illegally lenient sentence becomes part of the final judgment in *Dawson*. The first *Pullman* requirement is likewise not present. Contrary to the State's irrelevant assertion (at 5–6), Chaparro is not challenging the operation of any detention facility. Rather, Chaparro is challenging the State's refusal to give effect to his final and binding sentence—a sentence that provides for the "possibility of parole" after 25 years.

Federal courts adjudicating section 1983 cases ought to be concerned when states refuse to give effect and recognition to final and binding criminal sentences under straightforward applications of state law. Because the first and third *Pullman* requirements are conspicuously absent, the Court should not take the "extraordinary" step of abstaining and should instead adjudicate Chaparro's section 1983 case. *See Porter*, 319 F.3d at 492; *see also Toussaint*, 722 F.2d at 1495 ("Abstention is not favored in section 1983 cases.").

## II. CLAIMS ONE AND TWO SHOULD NOT BE DISMISSED.

The State argues that Chaparro's federal claims (Claims One and Two) should be dismissed under FRCP 12(b)(6).[3] Dismissal under that Rule is only appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (internal quotation marks and citation omitted).

---

[3] The State also references (at 1) FRCP 12(b)(1) but has not made any argument regarding this Court's lack of subject matter jurisdiction in this case. The allegations on the face of Chaparro's Complaint are sufficient to confer federal question jurisdiction. *See, e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (noting that federal question jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly pleaded complaint").

### A. This Court should disregard factual allegations not alleged in Chaparro's Complaint.

The State's Motion relies on several extraneous matters that assert facts not alleged on the face of Chaparro's Complaint. The State has attached a declaration asserting that some number of other inmates are similarly situated to Chaparro.[4] Declaration of Herb Haley, Dated Mar. 27, 2019 ("Haley Decl."). The State also asserts (at 4), without any support, that "[i]t appears that Judge D'Angelo used pre-1994 form language for the sentence, which had not been updated to reflect Arizona's abolition of parole." Additionally, the State attempts (at 3) to inject irrelevant details that are not asserted on the face of the Complaint about Chaparro's underlying offense in an improper attempt to prejudice the Court against him.

This Court should disregard these extraneous matters. *See Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1997) (stating that a motion to dismiss need not be converted to a motion for summary judgment if the court disregards extraneous materials). If this Court considers these matters, it should convert the State's Motion into a Motion for Summary Judgment and deny that Motion because, as discussed above, the State has put factual matters in dispute. *See* FRCP 56(a) (providing that summary judgment is only appropriate when "there is no genuine dispute as to any material fact").

### B. Chaparro has stated a claim for relief under the Equal Protection Clause.

The State argues that its disparate treatment of inmates who have exercised their constitutional right to trial does not rise to a violation of the Equal Protection Clause for two reasons. First, it claims (at 9–10) that the distinction is rational because defendants promised, but denied, parole eligibility would otherwise be able to withdraw their guilty

---

[4] Although the declarant states that he reviewed "time computation records" (Haley Decl. ¶ 3) to reach this conclusion, these records were not appended to the declaration, and they have not been provided to Chaparro for inspection. Chaparro has also not been able to depose the declarant or conduct any further discovery to test the veracity of these allegations.

pleas.[5] Second, it claims (at 10) that encouraging plea agreements, and treating pleading defendants differently from non-pleading defendants, furthers the important state interest of "the functioning of its criminal justice system."

### 1. Strict Scrutiny applies.

If a statute "burdens the exercise of a constitutional right, then the courts must apply strict scrutiny, and ask whether the statute is narrowly tailored to serve a compelling governmental interest." *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). Few constitutional rights are more fundamental than the right to a trial by jury. *See Blakely v. Washington*, 542 U.S. 296, 305–306 (2004) ("That right is no mere procedural formality, but a fundamental reservation of power in our constitutional structure."). The only difference between Chaparro and inmates who are eligible for parole under A.R.S. § 13-718, is that Chaparro exercised his constitutional right to trial. Chaparro has been denied equal protection based on his exercise of a constitutional right and the Court must apply strict scrutiny.

### 2. The State's attempt to characterize pleading inmates as "those to whom the State has made enforceable promises" is a distinction without a difference.

The State argues (at 9–10) that distinguishing between defendants to whom it has not made promises and those to whom it has made promises is rational. But this formulation of the argument is merely clever wordplay by the State. The comparison between plea bargains and commercial contracts is shallow, and when subjected to any scrutiny whatsoever, melts away. *See Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 769 (9th Cir. 2017) ("In the context of plea bargains, traditional black letter rules applicable to commercial contracts between private parties often yield, as they must, to substantive and procedural requirements, including federal or state rules of criminal procedure, that protect the various rights of the accused."). In other words, there is no constitutional right to a

---

[5] The State oddly offers no explanation (at 3) why it was apparently promising defendants parole eligibility even though "[t]here is . . . no dispute that Arizona statutory law at all relevant times unambiguously forbade parole to anyone convicted of first-degree murder after 1993."

commercial contract, but there is a constitutional right to liberty subject to the protections of the Fourteenth Amendment.

The State's argument that pleading defendants would be entitled to new trials is equally unavailing. The remedy for pleading defendants would not be the withdrawal of those plea agreements, but the same remedy to which Chaparro is entitled under *Dawson*: an enforcement of the sentence imposed. *See Fox v. Johnson*, 832 F.3d 978, 988 (9th Cir. 2016) ("[W]e have mandated specific performance as a remedy [for breach of a plea agreement] even where the sentence the prosecutor promised to a defendant was not a sentence allowed for under state law."); *see also Santobello v. New York*, 404 U.S. 257, 263 (1971). Thus, without the statutory amendment, pleading defendants and non-pleading defendants would be on essentially equal footing and would be entitled to the same relief.

> **3. The State may permissibly offer more lenient sentences to those who plead, but it may not permissibly impose harsher sentences after the fact on those who exercise their constitutional right to trial by jury.**

The State further argues (at 10) that offering preferential treatment to those who give up their right to trial and plead guilty furthers the important State interest in "the functioning of its criminal justice system." While it is not unconstitutional to provide a benefit for a defendant who waives his right to trial and pleads guilty, *see, e.g.*, *Brady v. United States*, 397 U.S. 742, 751 (1970), such a waiver must be "an intentional relinquishment or abandonment of a *known* right or privilege," *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (emphasis added). Courts have long recognized that plea bargaining is only permissible so long as defendants know the consequences of their plea, and it necessarily follows that they must also know the consequences of refusing to plead. *See, e.g.*, *McCarthy v. United States*, 394 U.S. 459, 466 (1969) (stating that a plea bargain "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts"); *see also Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) ("[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer.") (alteration in original) (citation omitted).

Therefore, the State may have a compelling interest in *offering* a defendant a more lenient sentence in exchange for giving up his right to trial. But it does not follow that the State may punish a defendant for failing to accept a plea many years *after* he was sentenced. Knowledge and voluntariness are fundamental aspects of a plea bargain, without which pleas are constitutionally invalid. *See McCarthy*, 394 U.S. at 466. If that is true, then it must also be true that a defendant must know the consequences of *failing* to plead in order to make "a reasonably informed decision." *See Turner*, 281 F.3d at 880.

There is no rational basis, much less a compelling State interest, in punishing defendants who refused to plead guilty twenty-five years ago. It does not encourage any interest in the functioning of the State's criminal justice system. The State's disparate treatment of pleading and non-pleading defendants violates the Equal Protection Clause.

**C.     Chaparro has stated a claim for relief under the Due Process Clause.**

The State argues (at 14) that Chaparro has no protected liberty or property interest in his sentence, and furthermore that there is no protected liberty interest to "expectation of receiving process." The State also claims (at 8–9) that the due process claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). This Court must examine due process claims in two steps, "the first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted).

**1.     *Heck* only applies to section 1983 claims seeking damages.**

The State alleges (at 8) that a section 1983 claim that "necessarily impl[ies] the invalidity of [a] conviction or sentence" is procedurally barred by *Heck*. But any cursory reading of *Heck* would reveal that it does not bar this claim because it only bars claims that seek "to recover *damages* for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." 512 U.S. at 486 (emphasis added). This suit does not seek damages, and so *Heck*

does not apply. And even if it applied, Chaparro is seeking to *enforce*, rather than to invalidate, his sentence.

### 2. Chaparro has a protected liberty or property interest.

When Chaparro was sentenced, the trial court had the ability to impose one of three sentences: "death or imprisonment in the custody of the state department of corrections for life or natural life." *See* A.R.S. § 13-751(A)(3).[6] The trial court sentenced him to "Life without possibility of parole for 25 years." Compl. Ex. A (Minute Entry Dated Dec. 6, 1996). The wording of that sentence clearly indicates an intent to grant Chaparro the possibility of parole after 25 years.[7] The State had the opportunity to appeal the validity of that sentence, both in the trial court, *see* Ariz. R. Crim. P. 24.3 (requiring that the trial court modify an "unlawful sentence or one imposed in an unlawful manner" within 60 days), and in the Court of Appeals, *see* A.R.S. § 13-4032(5) (permitting the State to appeal "[a] sentence on the grounds that it is illegal"). It did neither. As a result, the sentence is legal and binding, irrespective of statutory provisions which might otherwise make the sentence illegally lenient. *See Dawson*, 164 Ariz. at 280–86 & n.1, 792 P.2d at 743–49.

The State argues (at 11) that, pursuant to *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979), and *Carver v. Lehman*, 558 F.3d 869 (9th Cir. 2009), Chaparro does not have a protected liberty interest because his sentence does not contain "explicitly mandatory language" requiring parole. But the State misreads those cases. Those cases held that the *statutes and regulations* had to have sufficiently mandatory language in order to create a liberty interest, not that the sentence itself needed mandatory language. Further, Arizona law contains the required mandatory language to create a liberty interest in parole eligibility:

---

[6] Contrary to the State's claim (at 13) that the trial court had "no constitutional authority to make parole available," the Arizona Supreme Court recently held that the "plain language" of A.R.S. § 13-751 "leaves the eligibility decision squarely within the trial court's discretion." *State v. Benson*, 232 Ariz. 452, 465 ¶ 54, 307 P.3d 19, 32 (2013).

[7] Although this is not a Motion for Summary Judgment and extrinsic evidence should not be considered, the sentencing transcript in this case would demonstrate that the trial court gave Chaparro this sentence because it believed he deserved leniency and that it believed that Chaparro would be entitled to parole after 25 years.

- The Arizona Department of Corrections ("ADC") Director "*shall* develop and maintain a parole eligibility classification system," A.R.S. § 41-1604.09(A), and "*shall* certify as eligible for parole any prisoner classified within an eligible classification five months immediately before the prisoner's earliest parole eligibility," *id.* § 41-1604.09(D) (emphasis added).
- Every inmate "*shall* be entitled to a hearing before reclassification . . . to a lower class." *Id.* § 41-1604.09(E) (emphasis added).
- "[T]he prisoner's earliest parole eligibility occurs when the prisoner . . . is sentenced according to any provisions of law that prohibit the release on any basis until . . . [a] mandatory minimum term, in which case the prisoner must have served the sentence required by law." *Id.* § 41-1604.09(D).

According to this scheme, Chaparro's earliest parole eligibility is after he has served the "mandatory minimum term" of 25 years. ADC is compelled by Section 41-1604.09 to certify Chaparro as eligible for parole five months before this date. *See id.* § 41-1604.09(D).

The State's arguments that the text of Chaparro's sentence is superseded by Arizona's abolition of parole is unavailing in light of *Dawson*. *See* Section I. Even if the sentence granting parole eligibility constituted "outright and lawless defiance of the Arizona Legislature" (Motion at 13), it became valid and binding when the State decided not to appeal the legality of the sentence.[8] *See Dawson*, 164 Ariz. at 283, 792 P.2d at 746. The State's fanciful argument (at 12–13) that the word "parole" in the sentence was actually "shorthand for when all forms of executive clemency—*e.g.*, parole, commutation, work furlough, as applicable—became available to Chaparro," is not supported by any evidence, or by common sense. For the reasons stated in the Complaint, ¶¶ 28–29, "parole" and other forms of clemency are fundamentally different.

And even if Chaparro does not have a protected liberty interest, he has a protected property interest. "The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (collecting cases). "Property" protected by the Due Process Clause is "not limited to tangible property." *Crawford v. Antonio B. Won Pat Int'l Airport*

---

[8] For this reason, it is inappropriate to consider the sentence and the statutory text as two competing statutes that need to be analyzed according to the canons of construction. Regardless of the statutory permissibility of the sentence, it became valid and final once the State's opportunity to appeal expired. *See Dawson*, 164 Ariz. at 283, 792 P.2d at 746.

*Auth.*, 917 F.3d 1081, 1090 (9th Cir. 2019). "[A] reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (internal quotation marks and citation omitted). Chaparro has an entitlement in state law based on his sentence and the Arizona statutes that require ADC to certify him for parole after 25 years. *See* A.R.S. § 41-1604.09(D) ("[ADC] *shall* certify as eligible . . . .") (emphasis added).

### 3. Chaparro has no other constitutionally sufficient remedy.

Chaparro made several attempts to receive a certification date through the regular channels of written requests within ADC. *See* Compl. ¶¶ 23–24; Compl. Ex. B (Inmate Letter Response Dated Feb. 6, 2018). The State argues (at 15) that Arizona's post-conviction review process, and specifically Arizona Rule of Criminal Procedure 32.1(c), permits relief. But Chaparro does not seek to *modify* the sentence, but rather to *enforce* it.[9] Furthermore, Chaparro has already attempted to raise this issue on a petition for post-conviction relief, and the state court denied relief.

Chaparro has exhausted all other avenues of relief.[10] He is entitled to parole eligibility because of his sentence, but without adequate means to enforce the sentence absent section 1983 relief. This Court should grant that relief because Chaparro has no other constitutionally sufficient avenues to address the deprivation.

## III. THE BOARD IS NOT A NECESSARY PARTY AND NEED NOT BE ADDED AS A DEFENDANT.

A party is necessary if "in that person's absence, the court cannot accord complete relief among the existing parties." FRCP 19(a)(1)(A).[11] The State argues (at 15–16) that the

---

[9] *See also supra* note 1 at 6.

[10] Contrary to the State's assertion (at 9, n.5), *Wilkinson v. Dotson*, 544 U.S. 74 (2005) conclusively establishes section 1983 as the valid avenue for relief here because, by merely requesting to be certified as *eligible* for parole, Chaparro's success "*would not necessarily* spell immediate or speedier release." *See id.* at 81.

[11] A party may also be necessary if "that person claims an interest relating to the subject of the action." FRCP 19(a)(1)(B). The State has not alleged that the Board is necessary under this subsection of the rule, and so this Motion does not address it.

Board is a necessary party because, even if Chaparro were to succeed and be *certified* for parole, the Board could simply decline to give Chaparro a parole hearing. But the situation the State envisions is contrary to Arizona law.

Arizona law is quite clear on the Board's discretion to decline a parole hearing to an inmate who has been certified as parole-eligible: it has none. "A prisoner who is eligible for parole or absolute discharge from imprisonment *shall* be given an opportunity to be heard either before a hearing officer designated by the board or the board itself, at the discretion of the board." A.R.S. § 31-411(B) (emphasis added); *see also id.* § 31-411(A) ("Any prisoner who has been certified as eligible for parole . . . *shall* be given an opportunity to apply for release on parole . . . .") (emphasis added); *id.* § 31-411(C) ("A prisoner who is eligible for parole or absolute discharge from imprisonment *shall not* be denied parole or absolute discharge from imprisonment without an opportunity to be heard before the board unless another form of release has been granted.") (emphasis added). The use of the word "shall" in each of these statutory provisions "indicates a mandatory intent by the legislature." *See Ins. Co. of N. Am. v. Super. Ct.*, 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990).

In short, if this Court directs the State to certify that Chaparro is eligible for parole, the Board has no discretion to deny him a hearing, a fact which is clearly evident from the statute cited in the State's own Motion (at 15–16).[12]

## CONCLUSION

Chaparro respectfully requests that this Court deny the State's Motion for Certification or Dismissal in its entirety.

---

[12] The State's apparent reliance on A.R.S. § 41-1604.09 to support its unquestionably incorrect claim that the Board somehow has discretion to deny a hearing to a person certified as eligible for parole is unavailing, as that statute concerns the mechanism that ADC must apply to certifying an inmate as eligible for parole and has nothing at all to do with the activities of the Board.

143913219.1

-17-

Dated this 10th day of April, 2019.

**ARIZONA JUSTICE PROJECT**

By:/S/ Randy McDonald for
Lindsay Herf
Katherine Puzauskas
Robert J. Dormady
411 North Central Avenue, Suite 600
Phoenix, Arizona 85004

**PERKINS COIE LLP**

By:/S/ Randy McDonald
Howard R. Cabot
Randy McDonald
Austin C. Yost
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788

*Attorneys for Plaintiff Abelardo Chaparro*

**CERTIFICATE OF SERVICE**

☒ I hereby certify that on April 10, 2019, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following all registered CM/ECF registrant(s):

Copy of the foregoing mailed this
10th day of April, 2019 to:

**Anthony R Napolitano**
**Brunn Wall Roysden, III**
**Drew Curtis Ensign**
**Oramel Horace Skinner**
**Robert John Makar**
**Rusty Duane Crandell**
Office of the Attorney General-Phoenix
2005 N Central Ave
Phoenix, AZ 85004

By: /S/ *Jennifer Gonzalez*
        **Perkins Coie, LLP**

143913219.1