**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Abelardo Chaparro,<br><br>        Plaintiff,<br><br>v.<br><br>Charles L. Ryan,<br><br>        Defendant. | No. CV 19-00650-PHX-DWL (MHB)<br><br>**ORDER** |

## INTRODUCTION

In 1993, the Arizona Legislature passed a law eliminating the availability of parole for crimes committed on or after January 1, 1994. In May 1995—about a year-and-a-half after this parole moratorium went into effect—Plaintiff Abelardo Chaparro ("Chaparro") shot and killed a man outside a convenience store in Phoenix. Chaparro was eventually convicted of first-degree murder following a trial in the Maricopa County Superior Court. The trial judge sentenced Chaparro to a sentence of "life without the possibility of parole for 25 years." The State didn't appeal this sentence.

Chaparro has now spent more than 24 years in prison. Recently, he submitted several requests to prison officials for verification he'll be certified for parole eligibility after hitting the 25-year mark. In response, he was told he won't ever be certified.

This case ensued. Although Chaparro doesn't frame his lawsuit this way, the Court construes his complaint as articulating two alternative reasons why he should be deemed parole-eligible. First, he contends his sentence of "life without the possibility of parole for

1 | 25 years" necessarily means he must be deemed parole-eligible after 25 years.  He further
2 | contends that, although this outcome might conflict with the Arizona Legislature's decision
3 | to eliminate parole in 1993, the State forfeited its ability to complain about his "illegally
4 | lenient" sentence by failing to appeal it.  Under this theory (which, in the Court's view,
5 | provides the foundation for Counts Two and Three in Chaparro's complaint), Chaparro
6 | isn't challenging the *validity* of his sentence at all—he's simply asking for an order that
7 | would require prison officials to *implement* his sentence.

Second, and alternatively, the premise underlying Count One in Chaparro's complaint is that if the prison officials' interpretation of his sentence is correct (*i.e.,* he'll never become eligible for parole), such a sentence would be unconstitutional and violate the Equal Protection Clause of the Fourteenth Amendment.  Specifically, he notes that the Arizona Legislature recently passed a law clarifying that prisoners who were convicted *via guilty plea* of the crime of first-degree murder may become eligible for parole and argues that denying parole eligibility to inmates who were convicted *at trial* of the same crime would impermissibly penalize them for exercising a constitutional right.

Now pending before the Court is the State's "motion for certification or dismissal."[1] In a nutshell, the State argues the key threshold issue in this case is an unresolved question of state law—whether Chaparro's sentence of "life without the possibility of parole for 25 years" means he becomes parole-eligible after 25 years or whether the sentence should be construed as never resulting in parole eligibility.  Thus, the State contends the Court should either certify this question to the Arizona Supreme Court or abstain from resolving it. Alternatively, the State argues that Chaparro's federal constitutional claims should be dismissed for various reasons and that Chaparro should be required under Rule 19 to name the members of the Board of Executive Clemency as additional defendants.  Chaparro disagrees with all of those arguments.

---

[1] The defendant in this case is Charles L. Ryan, who is sued only in his official capacity as director of the Arizona Department of Corrections ("DOC").  For sake of simplicity, the Court will refer to Ryan as "the State."

As explained below, the Court agrees with the State that the most prudent course of action, and the course of action most consistent with the values of comity and federalism, is to seek certification from the Arizona Supreme Court concerning what, exactly, Chaparro's sentence means under Arizona law. If, as Chaparro argues, a sentence of "life without the possibility of parole for 25 years" means that an inmate becomes parole-eligible after 25 years, there will be no need to resolve Chaparro's federal constitutional challenges.

**BACKGROUND**

I. Underlying Facts

The following facts, which the Court assumes to be true for purposes of the pending motion, are derived from Chaparro's complaint and request for judicial notice.[2]

In 1993, A.R.S. § 41-1604.09 was amended to eliminate parole for all offenses committed on or after January 1, 1994. (Doc. 1 ¶ 9.)

On May 31, 1995, Chaparro was charged with first-degree murder in connection with events that occurred on May 21, 1995. (*Id.* ¶ 10.)

On July 25, 1996, Chaparro was convicted at trial of one count of first-degree murder. (*Id.* ¶ 13.)

On September 20, 1996, at the conclusion of Chaparro's sentencing hearing, the trial judge stated: "[I]t is the judgment and sentence of the Court you be imprisoned for the rest of your natural life without the possibility of parole for 25 years, followed by a consecutive term of community supervision equal to one day for every seven days of sentence imposed." (Doc. 21-1 at 17.)

On September 23, 1996, the trial court issued a minute entry reflecting that Chaparro's sentence was "Natural Life without possibility of parole for 25 years." (Doc. 21-2 at 5.)

---

[2] Chaparro's request (Doc. 21) asks the Court to take judicial notice of (1) the sentencing transcript from his criminal case, (2) the original minute entry issued after his sentencing, (3) a corrected minute entry issued three months later, (4) a plea agreement from 1995 in which a different defendant pleaded guilty to first-degree murder, and (5) an agenda showing that the other defendant had a parole hearing in February 2019. (Doc. 21.) This request will be granted.

On December 6, 1996, the trial court issued a minute entry stating that, "[d]ue to clerical error, IT IS ORDERED nunc pro tunc to September 20, 1996, to reflect the following sentence: Life without possibility of parole for 25 years." (Doc. 21-3 at 2.)

The State chose not to appeal Chaparro's sentence. (Doc. 1 ¶ 16.)

On July 31, 1997, the Arizona Court of Appeals issued a memorandum decision rejecting Chaparro's appeal and affirming his conviction and sentence. (*Id.* ¶ 17.)

On May 19, 1998, the Arizona Supreme Court denied further review of Chaparro's conviction and sentence. (*Id.* ¶ 18.)

In or around April 2017, Chaparro was told by an ADC corrections officer that he will never become eligible for parole consideration and that his only avenue for seeking release would be to apply for commutation after serving 25 years. (*Id.* ¶ 22.)

Between April 2017 and December 2017, Chaparro filed several written requests and demands for parole eligibility with ADC officials, which were denied. (*Id.* ¶ 23.)

In February 2018, Chaparro received a letter from the ADC's Offender Services Bureau Administrator informing him that he "would not be parole certified." (*Id.* ¶ 24.)[3]

As of June 17, 2019, Chaparro had served 24 years of his sentence. (*Id.* ¶ 20.)

In 2018, the Arizona Legislature enacted, and the Governor signed, Senate Bill 1211, which is now codified at A.R.S. § 13-718. (*Id.* ¶ 26.) The statute provides that "a person who was convicted of first degree murder and who was sentenced [between January 1, 1994 and August 3, 2018] to life with the possibility of parole after serving a minimum number of calendar years *pursuant to a plea agreement that contained a stipulation to parole eligibility* is eligible for parole after serving the minimum number of calendar years that is specified in the sentence." (*Id.*, emphasis in complaint.)

---

[3] Chaparro attaches the actual letter as Exhibit B to his complaint. It provides in relevant part as follows: "As for your request for a hearing with the Arizona Board of Executive Clemency, currently there is nothing in statute that addresses how an inmate with an offense date on or after 01/01/94 that was sentenced to 25 years to life will be released after serving the minimum of 25 years. This is a matter that the state legislature will have to address in the near future." (Doc. 1-3 at 3.)

1    On January 17, 2020, the ADC's Time Computation Unit would be required under
2 A.R.S. § 41-1604.09(D) to initiate Chaparro's parole proceedings if he were deemed parole
3 eligible. (*Id.* ¶ 25.)

II.     Chaparro's Claims

On February 1, 2019, Chaparro filed his complaint. (Doc. 1.) It asserts three causes of action.

In Count One, Chaparro asserts a claim under 42 U.S.C. § 1983 premised on a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 30-31.) He contends that "[t]he only difference between Plaintiff, who is not entitled to parole eligibility under A.R.S. § 13-718, and the prisoners who are eligible for parole under § 13-718, is that Mr. Chaparro exercised his constitutional right of trial." (*Id.* ¶ 30.) He further contends that "exercising a constitutional right cannot be a rational, or even permissible, basis for denying a liberty interest to others." (*Id.* ¶ 31.)

In Count Two, Chaparro asserts a claim under 42 U.S.C. § 1983 premised on a violation of his rights under the Due Process Clause of the Fourteenth Amendment. (*Id.* ¶¶ 32-34.) He contends that, because "the State did not challenge the life-with-possibility-of-parole sentence imposed on Plaintiff by the state trial court," the sentence is now "valid and final" and he has a protected liberty and property interest in the enforcement of that sentence. (*Id.*)

In Count Three, Chaparro asserts a claim entitled "Failure to Enforce Lawful Sentence." (*Id.* ¶¶ 35-37.) He contends that the State's "refusal to certify Plaintiff for parole is a violation of Arizona law and constitutes a failure to perform a duty required by law over which [it] has no discretion." (*Id.* ¶ 37.)

As for relief, Chaparro seeks (1) a declaration that he is eligible for parole after serving 25 years' imprisonment, (2) a preliminary and permanent injunction requiring the State to certify him as eligible for parole "five months prior to serving 25 calendar years of imprisonment," and (3) attorneys' fees and costs. (*Id.* at 7.)

…

**DISCUSSION**

I.  The Parties' Arguments

In its "Motion for Certification or Dismissal" (Doc. 8), the State makes four arguments. First, the State argues the Court should certify the state-law issue underlying Chaparro's claim in Count Three (*i.e.,* whether Chaparro's sentence entitles him to parole eligibility after 25 years) and postpone adjudication of the constitutional claims asserted in Counts One and Two until the Arizona Supreme Court answers the certified question. (Doc. 8 at 5-7.) Alternatively, the State argues the requirements for *Pullman* abstention are met so, in lieu of certification, the Court could abstain from exercising federal jurisdiction over Count Three. (*Id.*) Second, the State argues Count Two should be dismissed under *Heck v. Humphrey,* 512 U.S. 477 (1994), because a state inmate can't use a § 1983 claim to challenge the validity of his sentence. (*Id.* at 8-9.) Third, the State argues Counts Two and Three should be dismissed for failure to state a claim. (*Id.* at 9-15.) Fourth, the State argues that the members of the Board of Executive Clemency are necessary parties under Rule 19 and Chaparro should therefore be required to join them. (*Id.* at 15-16.)

In his response (Doc. 10), Chaparro argues the State's requests for certification or abstention "both fall flat for the same reason—the Arizona Supreme Court already decided in *State v. Dawson*, 164 Ariz. 278, 792 P.2d 741 (1990), that a criminal defendant's illegally lenient sentence becomes part of the final judgment." (*Id.* at 4.) Specifically, Chaparro argues that because he already received a sentence "that provides for the 'possibility of parole' after 25 years," and the State forfeited its ability to challenge that sentence by failing to take a cross-appeal, there is nothing "doubtful" about the status of state law (which is a prerequisite for certification or abstention). (*Id.* at 4-9.) Second, as for the State's argument that Count Two is barred by *Heck v. Humphrey*, Chaparro argues *Heck* is inapplicable because (1) it only applies to claims for money damages under § 1983, while he is merely seeking injunctive and declaratory relief, and (2) it only applies when a state inmate seeks to challenge his sentence via § 1983, and he "is seeking to enforce, rather

than to invalidate, his sentence." (*Id.* at 13-14.) Chaparro also argues that *Wilkinson v. Dotson*, 544 U.S. 74 (2005), authorizes an inmate to use a § 1983 claim to challenge a parole-eligibility determination. (*Id.* at 16 n.10.) Third, Chaparro defends the sufficiency of his § 1983 claims, arguing that neither claim is subject to dismissal under Rule 12(b)(6). (*Id.* at 10-16.) Fourth, Chaparro argues that the members of the clemency board aren't necessary parties because, if he receives an order requiring the State to certify him as parole-eligible, the board members will have "no discretion to deny him a hearing." (*Id.* at 16-17.)

In its reply (Doc. 13), the State takes issue with Chaparro's suggestion that his "sentence unambiguously establishes parole eligibility," arguing that his "sentence is unambiguous only in its prohibition of parole for 25 years and is then ambiguous as to what happens after that." (*Id.* at 2-3.) Given this ambiguity, the State argues, "the question of how it should be interpreted is necessarily one of Arizona law—and one which Arizona state courts should resolve." (*Id.* at 4.) The State also contends Chaparro's reliance on *Dawson* is misplaced because (1) "the antecedent question" in this case "is one of interpretation—*i.e.,* does his sentence actually provide for parole eligibility—rather than enforcement," (2) *Dawson* doesn't overrule Arizona Rule of Criminal Procedure 24.4, which allows courts to "correct clerical errors, omissions, and oversights" at any time, and (3) *Dawson* merely holds that collateral challenges to judgments are disfavored, not categorically barred. (*Id.* at 4-7.) As for Count Two, the State argues that *Heck* forbids all § 1983 claims challenging the validity of a sentence, irrespective of whether the relief sought is monetary or injunctive in nature, and that *Wilkinson* is inapplicable because it "merely allowed a Section 1983 claim regarding parole to go forward that was not predicated on any purported defects in a conviction or sentence." (*Id.* at 7 & n.2.) Finally, the State also provides additional argument in support of its request for dismissal of Counts One and Two under Rule 12(b)(6) (*id.* at 7-10) and concerning the supposed necessity of naming the board members as defendants (*id.* at 11).

…

II. Analysis

  A. **Certification**

"Through certification of novel or unsettled questions of state law for authoritative answers by a State's highest court, a federal court may save time, energy, and resources and hel[p] build a cooperative judicial federalism." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 77 (1997) (citations and internal quotation marks omitted). The Supreme Court has explained that certification is particularly appropriate "when a federal court is asked to invalidate a State's law, for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court." *Id.* at 79. Nevertheless, "[n]ovel, unsettled questions of state law . . . are necessary before federal courts may avail themselves of state certification procedures." *Id. See also Harris v. Arizona Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1068 (D. Ariz. 2014) ("A basic prerequisite for a court to certify a question to the Arizona Supreme Court is the existence of a pending issue of Arizona law not addressed by relevant Arizona authorities."). Furthermore, the Arizona Supreme Court may accept a request for certification only if the question to be resolved "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the intermediate appellate courts of this state." A.R.S. § 12-1861.

All of these requirements are satisfied here. First, this case presents a "novel or unsettled question[] of state law" as to which "there is no controlling precedent" from the Arizona appellate courts. *Arizonans for Official English,* 520 U.S. at 77; A.R.S. § 12-1861. Neither party has cited a case by the Arizona Supreme Court or Arizona Court of Appeals addressing how to interpret a sentence of "life without the possibility of parole for 25 years" that was imposed for a crime committed after Arizona's eradication of parole in 1993. Although Chaparro argues that such a sentence *should* be construed to provide parole eligibility after 25 years—why else mention the unavailability of parole for the first 25 years?—the State has some counter-arguments in its arsenal. Because this is a pure

question of state law, it should be an Arizona state court, not a federal court in a § 1983 action, that resolves it in the first instance.

*Dawson* is not to the contrary. *Dawson* holds that, under Arizona law, the State ordinarily forfeits its ability to challenge an "illegally lenient" sentence if it doesn't pursue a timely appeal. Here, however, the State isn't necessarily trying to challenge Chaparro's sentence—among other things, it contends Chaparro's sentence wasn't "illegally lenient" in the first place because the proper way to interpret the sentence is as precluding parole eligibility.

Second, certification is also appropriate because the disputed issue "may be determinative of the cause then pending in the certifying court." A.R.S. § 12-1861. The relief Chaparro ultimately seeks in this case is "[a] declaration that Plaintiff is eligible for parole after serving 25 years imprisonment." (Doc. 1 at 7.) This is exactly the relief Chaparro will obtain if he prevails during the certification proceeding—a victory by Chaparro there will result in a declaration by the Arizona Supreme Court that his sentence of "life without the possibility of parole for 25 years" means he must become eligible for parole upon reaching the 25-year mark.[4]

Third, certification is particularly appropriate here because it will promote values of comity and federalism. In Count One of his complaint, Chaparro asks the Court to conclude that, to the extent he isn't eligible for parole under his sentence, this outcome would violate the Equal Protection Clause of the Fourteenth Amendment because the State has afforded parole eligibility to others who pleaded guilty to (instead of being convicted at trial of) the same crime. Yet the Court need not resolve this claim if the Arizona Supreme Court concludes Chaparro's sentence entitles him to parole eligibility—in that circumstance, there will be no disparate treatment between defendants who pleaded guilty

---

[4] During oral argument, the State argued that, in addition to seeking clarification from the Arizona Supreme Court concerning the meaning of Chaparro's sentence, the Court should also seek guidance concerning whether the State could, in the event of an adverse ruling on that issue, seek various forms of relief under the Arizona Rules of Criminal Procedure. The Court declines this request because it addresses a hypothetical issue that is not squarely presented in this proceeding.

and those who went to trial. Thus, granting the State's certification request will allow the Court to avoid the "risk[] [of] friction-generating error" that arises whenever a "federal tribunal . . . endeavors to construe a novel state Act not yet reviewed by the State's highest court." *Arizonans for Official English,* 520 U.S. at 79. It is also relevant, for comity purposes, that the State is the party making the certification request. *Id.* ("The complexity might have been avoided had the District Court, more than eight years ago, accepted the certification suggestion made by Arizona's Attorney General.").

For all of these reasons, certification is appropriate. Moreover, the Court notes that Chaparro is not the only person with an interest in the issue for which certification is being sought. The State has suggested there are many—perhaps hundreds—of other Arizona defendants who were sentenced to "life without the possibility of parole for 25 years" after being convicted at trial of murders committed after January 1, 1994. (Doc. 8 at 1.) This makes it even more appropriate to give the Arizona Supreme Court the first opportunity to address this important issue of state law. Many other defendants, and victims, may be affected by its resolution.[5] Additionally, because Chaparro's parole proceedings wouldn't be initiated until January 2020 at the earliest, it's unlikely the delay caused by the certification process will cause Chaparro to suffer any harm.[6]

---

[5] Although Chaparro has asked the Court to take judicial notice of the sentencing transcript from his case, because he contends it shows that the prosecutor and judge subjectively believed he would be eligible for parole after 25 years, Chaparro clarified during oral argument that his position is that all defendants who received a sentence of "life without the possibility of parole for 25 years" following the 1994 cutoff should be deemed eligible for parole at the 25-year mark. Given this clarification, the Court has not limited its certification request to a determination of how, under state law, to construe the sentence of "life without the possibility of parole for 25 years" that was imposed in Chaparro's case. Instead, the certification request applies to all such sentences.

[6] Because certification is appropriate, it is unnecessary to resolve the State's alternative request for *Pullman* abstention. *See, e.g., Arizonans for Official English,* 520 U.S. at 75-76 (explaining that certification is generally preferable to *Pullman* abstention because it "allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response"); *Doyle v. City of Medford*, 565 F.3d 536, 543 (9th Cir. 2009) ("[W]e could simply abstain from deciding this case under the *Pullman* doctrine . . . [but] certification is appropriate in *Pullman*-type abstention cases because the alternative to certification is federal court abstention and the attendant delay until resolution of the derivative state court . . . action (including trial, the right to a direct appeal, and the right to seek discretionary review after the direct appeal).") (citations and internal quotation marks omitted).

Based on these considerations, the Court will, by separate Order pursuant to Rule 27 of the Rules of the Supreme Court of Arizona, certify the following question to the Arizona Supreme Court: whether, in light of A.R.S. § 41-1604.09, a person convicted of first-degree murder following a jury trial for actions that took place on or after January 1, 1994, is eligible for parole after 25 years where his sentence states that he is sentenced to "life without possibility of parole for 25 years."

B. **The State's Other Arguments**

Because the State's certification request is being granted, the Court will stay this action pending the Arizona Supreme Court's response and will deny, without prejudice, the State's dismissal arguments.

***

Accordingly, **IT IS ORDERED** that:

(1) The reference to the Magistrate Judge is **withdrawn** as to the State's Motion for Certification or Dismissal (Doc. 8);

(2) The State's Motion (Doc. 8) is **granted in part** to the extent that the Court will **stay** this action and, by separate Order, **certify** the following question to the Arizona Supreme Court:

> Whether, in light of Arizona Revised Statutes § 41-1604.09, a person convicted of first-degree murder following a jury trial for actions that took place on or after January 1, 1994, is eligible for parole after 25 years when his sentence states that he is sentenced to "life without possibility of parole for 25 years."

(3) The State's Motion (Doc. 8) is otherwise **denied without prejudice**; and

(4) This action is **stayed** pending a response to the above certified question from the Arizona Supreme Court.

Dated this 19th day of July, 2019.

Dominic W. Lanza
United States District Judge