**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Abelardo Chaparro,<br><br>    Plaintiff,<br><br>v.<br><br>Charles L. Ryan,<br><br>    Defendant. | No. CV 19-00650-PHX-DWL (MHB)<br><br>**CERTIFICATION TO THE ARIZONA SUPREME COURT** |

**BACKGROUND**

In 1993, the Arizona Legislature passed a law eliminating the availability of parole for crimes committed on or after January 1, 1994. In May 1995—about a year-and-a-half after this parole moratorium went into effect—Plaintiff Abelardo Chaparro ("Chaparro") shot and killed a man outside a convenience store in Phoenix. Chaparro was eventually convicted of first-degree murder following a trial in the Maricopa County Superior Court. The trial judge sentenced Chaparro to a sentence of "life without the possibility of parole for 25 years." The State didn't appeal this sentence.

Chaparro has now spent more than 24 years in prison. Recently, he submitted several requests to prison officials for verification he'll be certified for parole eligibility after hitting the 25-year mark. In response, he was told he won't ever be certified.

This § 1983 action ensued. Chaparro's complaint articulates two alternative reasons why he should be deemed parole-eligible. First, he contends his sentence of "life without the possibility of parole for 25 years" necessarily means he must be deemed parole-eligible

after 25 years. He further contends that, although this outcome might conflict with the Arizona Legislature's decision to eliminate parole in 1993, the State forfeited its ability to complain about his "illegally lenient" sentence by failing to appeal it. Under this theory, Chaparro isn't challenging the validity of his sentence at all—he's simply asking for an order that would require prison officials to implement his sentence.

Second, and alternatively, Chaparro contends that if the prison officials' interpretation of his sentence is correct (*i.e.,* he'll never become eligible for parole), such a sentence would be unconstitutional and violate the Equal Protection Clause of the Fourteenth Amendment. Specifically, he notes that the Arizona Legislature recently passed a law clarifying that prisoners who were convicted *via guilty plea* of the crime of first-degree murder may become eligible for parole and argues that denying parole eligibility to inmates who were convicted *at trial* of the same crime would impermissibly penalize them for exercising a constitutional right.

The State[1] filed a Motion for Certification or Dismissal that, among other things, asked this Court to certify to the Arizona Supreme Court the question whether Chaparro's sentence entitles him to parole eligibility. (Doc. 8.) After full briefing and oral argument, the Court granted the State's certification request. (Doc. 23.) The Court now issues this Certification Order pursuant to Rule 27 of the Rules of the Supreme Court of Arizona.

**I.     Question Of Law To Be Addressed**

The question of law to be addressed is whether, in light of A.R.S. § 41-1604.09, a person convicted of first-degree murder following a jury trial for actions that took place on or after January 1, 1994, is eligible for parole after 25 years when his sentence states that he is sentenced to "life without possibility of parole for 25 years."

**II.    Statement Of Facts Relevant To The Certified Question**

The following facts, which the Court assumes to be true for purposes of certification, are derived from Chaparro's complaint (Doc. 1) and request for judicial notice (Doc. 21).

---

[1] The defendant in this case is Charles L. Ryan, who is sued only in his official capacity as director of the Arizona Department of Corrections ("ADC"). For sake of simplicity, the Court will refer to Ryan as "the State."

In 1993, the Arizona Legislature amended A.R.S. § 41-1604.09 to eliminate parole for all offenses committed on or after January 1, 1994. (Doc. 1 ¶ 9.)

On May 31, 1995, Chaparro was charged with first-degree murder in connection with events that occurred on May 21, 1995. (*Id.* ¶ 10.)

On July 25, 1996, Chaparro was convicted at trial of one count of first-degree murder. (*Id.* ¶ 13.)

On September 20, 1996, at the conclusion of Chaparro's sentencing hearing, the trial judge stated: "[I]t is the judgment and sentence of the Court you be imprisoned for the rest of your natural life without the possibility of parole for 25 years, followed by a consecutive term of community supervision equal to one day for every seven days of sentence imposed." (Doc. 21-1 at 17.)

On September 23, 1996, the trial court issued a minute entry reflecting that Chaparro's sentence was "Natural Life without possibility of parole for 25 years." (Doc. 21-2 at 5.)

On December 6, 1996, the trial court issued a minute entry stating that, "[d]ue to clerical error, IT IS ORDERED nunc pro tunc to September 20, 1996, to reflect the following sentence: Life without possibility of parole for 25 years." (Doc. 21-3 at 2.)

The State chose not to appeal Chaparro's sentence. (Doc. 1 ¶ 16.)

On July 31, 1997, the Arizona Court of Appeals issued a memorandum decision rejecting Chaparro's appeal and affirming his conviction and sentence. (*Id.* ¶ 17.)

On May 19, 1998, the Arizona Supreme Court denied further review of Chaparro's conviction and sentence. (*Id.* ¶ 18.)

In or around April 2017, Chaparro was told by an ADC corrections officer that he will never become parole eligible and that his only avenue for seeking release would be to apply for commutation after serving 25 years. (*Id.* ¶ 22.)

Between April 2017 and December 2017, Chaparro filed several written requests and demands for parole eligibility with ADC officials, which were denied. (*Id.* ¶ 23.)

1 | In February 2018, Chaparro received a letter from the ADC's Offender Services Bureau Administrator informing him that he "would not be parole certified." (*Id.* ¶ 24.)

As of June 17, 2019, Chaparro had served 24 years of his sentence. (*Id.* ¶ 20.)

In 2018, the Arizona Legislature enacted, and the Governor signed, Senate Bill 1211, which is now codified at A.R.S. § 13-718. (*Id.* ¶ 26.) The statute provides that "a person who was convicted of first degree murder and who was sentenced [between January 1, 1994 and August 3, 2018] to life with the possibility of parole after serving a minimum number of calendar years *pursuant to a plea agreement that contained a stipulation to parole eligibility* is parole eligible after serving the minimum number of calendar years that is specified in the sentence." (*Id.*, emphasis in complaint.)

On January 17, 2020, the ADC's Time Computation Unit would be required under A.R.S. § 41-1604.09(D) to initiate Chaparro's parole proceedings if he were deemed parole eligible. (*Id.* ¶ 25.)

### III. List Of Counsel

Counsel for Chaparro

| | |
|---|---|
| **Austin Clark Yost**<br>Perkins Coie LLP<br>2901 N Central Ave., Ste. 2000<br>Phoenix, AZ 85012<br>602-351-8000 | **Lindsay Ann Herf**<br>Arizona Justice Project<br>411 N Central Ave., Ste. 600<br>Phoenix, AZ 85004<br>602-496-0286 |
| **Howard Ross Cabot**<br>Perkins Coie LLP<br>2901 N Central Ave., Ste. 2000<br>Phoenix, AZ 85012<br>602-351-8000 | **Randal Boyd McDonald, III**<br>Perkins Coie LLP<br>2901 N Central Ave., Ste. 2000<br>Phoenix, AZ 85012<br>602-351-8000 |
| **Katherine Ann Puzauskas**<br>ASU Alumni Law Group<br>111 E Taylor, Ste. 120<br>Phoenix, AZ 85004-4467<br>602-496-0286 | **Robert Joseph Dormady**<br>Arizona Justice Project<br>411 N Central Ave., Ste. 600<br>Phoenix, AZ 85004-2139<br>480-965-0621 |

Counsel for the State

| | |
|---|---|
| **Brunn Wall Roysden, III**<br>Office of the Attorney General<br>2005 N Central Ave.<br>Phoenix, AZ 85004-1592<br>602-798-5400 | **Robert John Makar**<br>Office of the Attorney General<br>2005 N Central Ave.<br>Phoenix, AZ 85004-1592<br>602-542-4389 |
| **Drew Curtis Ensign**<br>Office of the Attorney General<br>2005 N Central Ave.<br>Phoenix, AZ 85004-1592<br>602-542-5200 | **Rusty Duane Crandell**<br>Office of the Attorney General<br>2005 N Central Ave.<br>Phoenix, AZ 85004-1592<br>602-542-8540 |
| **Oramel Horace Skinner**<br>Office of the Attorney General<br>2005 N Central Ave.<br>Phoenix, AZ 85004-1592<br>602-542-8327 | |

### IV. Proportions In Which The Parties Shall Share The Required Filing Fees

Chaparro    0%

State    100%

### V. Other Matters Relevant To Certification

"Through certification of novel or unsettled questions of state law for authoritative answers by a State's highest court, a federal court may save time, energy, and resources and hel[p] build a cooperative judicial federalism." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 77 (1997) (citations and internal quotation marks omitted). The Supreme Court has explained that certification is particularly appropriate "when a federal court is asked to invalidate a State's law, for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court." *Id.* at 79. Nevertheless, "[n]ovel, unsettled questions of state law . . . are necessary before federal courts may avail themselves of state certification procedures." *Id. See also Harris v. Arizona Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1068 (D. Ariz. 2014) ("A basic prerequisite for a court to certify a question to the Arizona Supreme Court is the existence of a pending issue of Arizona law not addressed by relevant Arizona

authorities."). Furthermore, the Arizona Supreme Court may accept a request for certification only if the question to be resolved "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the intermediate appellate courts of this state." A.R.S. § 12-1861.

All of these requirements are satisfied here. First, this case presents a "novel or unsettled question[] of state law" as to which "there is no controlling precedent" from the Arizona appellate courts. *Arizonans for Official English,* 520 U.S. at 77; A.R.S. § 12-1861. Neither party has cited a case by the Arizona Supreme Court or Arizona Court of Appeals addressing how to interpret a sentence of "life without the possibility of parole for 25 years" that was imposed for a crime committed after Arizona's eradication of parole in 1993. Although Chaparro argues that such a sentence should be construed to provide parole eligibility after 25 years—why else mention the unavailability of parole for the first 25 years?—the State has some counter-arguments in its arsenal. Because this is a pure question of state law, it should be an Arizona state court, not a federal court in a § 1983 action, that resolves it in the first instance.

Second, certification is also appropriate because the disputed issue "may be determinative of the cause then pending in the certifying court." A.R.S. § 12-1861. The relief Chaparro ultimately seeks in this case is "[a] declaration that Plaintiff is eligible for parole after serving 25 years imprisonment." (Doc. 1 at 7.) This is exactly the relief Chaparro will obtain if he prevails during the certification proceeding—a victory by Chaparro there will result in a declaration by the Arizona Supreme Court that his sentence of "life without the possibility of parole for 25 years" means he must become eligible for parole upon reaching the 25-year mark.[2]

---

[2] During oral argument, the State argued that, in addition to seeking clarification from the Arizona Supreme Court concerning the meaning of Chaparro's sentence, the Court should also seek guidance concerning whether the State could, in the event of an adverse ruling on that issue, seek various forms of relief under the Arizona Rules of Criminal Procedure. The Court declines this request because it addresses a hypothetical issue that is not squarely presented in this proceeding.

Third, certification is particularly appropriate here because it will promote values of comity and federalism. In Count One of his complaint, Chaparro asks the Court to conclude that, to the extent he isn't eligible for parole under his sentence, this outcome would violate the Equal Protection Clause of the Fourteenth Amendment because the State has afforded parole eligibility to others who pleaded guilty to (instead of being convicted at trial of) the same crime. Yet the Court need not resolve this claim if the Arizona Supreme Court concludes Chaparro's sentence entitles him to parole eligibility—in that circumstance, there will be no disparate treatment between defendants who pleaded guilty and those who went to trial. Thus, granting the State's certification request will allow the Court to avoid the "risk[] [of] friction-generating error" that arises whenever a "federal tribunal . . . endeavors to construe a novel state Act not yet reviewed by the State's highest court." *Arizonans for Official English,* 520 U.S. at 79. It is also relevant, for comity purposes, that the State is the party making the certification request. *Id.* ("The complexity might have been avoided had the District Court, more than eight years ago, accepted the certification suggestion made by Arizona's Attorney General.").

For all of these reasons, certification is appropriate. Moreover, the Court notes that Chaparro is not the only person with an interest in the issue for which certification is being sought. The State has suggested there are many—perhaps hundreds—of other Arizona defendants who were sentenced to "life without the possibility of parole for 25 years" after being convicted at trial of murders committed after January 1, 1994. (Doc. 8 at 1.) This makes it even more appropriate to give the Arizona Supreme Court the first opportunity to address this important issue of state law. Many other defendants, and victims, may be affected by its resolution.[3] Additionally, because Chaparro's parole proceedings wouldn't

---

[3] Although Chaparro asked the Court to take judicial notice of the sentencing transcript from his case, because he contends it shows that the prosecutor and judge subjectively believed he would be eligible for parole after 25 years, Chaparro clarified during oral argument that his position is that all defendants who received a sentence of "life without the possibility of parole for 25 years" following the 1994 cutoff should be deemed eligible for parole at the 25-year mark. Given this clarification, the Court has not limited its certification request to a determination of how, under state law, to construe the sentence of "life without the possibility of parole for 25 years" that was imposed in Chaparro's case. Instead, the certification request applies to all such sentences.

be initiated until January 2020 at the earliest, it's unlikely the delay caused by the certification process will cause Chaparro to suffer any harm.

***

Accordingly, **IT IS ORDERED** that:

(1) The following question is certified to the Arizona Supreme Court:

> Whether, in light of A.R.S. § 41-1604.09, a person convicted of first-degree murder following a jury trial for actions that took place on or after January 1, 1994, is parole eligible after 25 years when his sentence states that he is sentenced to "life without possibility of parole for 25 years."

(2) The Clerk of Court shall provide the original and six copies of this Certification Order to the Arizona Supreme Court.

Dated this 24th day of July, 2019.

Dominic W. Lanza
United States District Judge